998 So.2d 380 (2008)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Nicki M. BOLAND.
No. 2007-JP-01959-SCT.
Supreme Court of Mississippi.
October 2, 2008.
Rehearing Denied January 22, 2009.
*381 Luther T. Brantley, III, Darlene D. Ballard, attorneys for appellant.
Robert F. Wilkins, attorney for appellee.
EN BANC.
RANDOLPH, Justice, for the Court.
¶ 1. On September 14, 2006, the Mississippi Commission on Judicial Performance ("the Commission") filed two Formal Complaints, Inquiry No.2006-84 and Inquiry No.2006-121, against Hinds County District One Justice Court Judge Nicki M. Boland. Boland has been a licensed attorney in Mississippi since 1980. She was sworn into the office of justice court judge in January of 2004 and served until her term expired. Boland was a candidate for re-election, but suffered defeat at the hands of the electorate.
¶ 2. The complaints stem from separate incidents. Each complaint alleged Boland's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought *382 the judicial office into disrepute, thus causing such conduct to be actionable pursuant to the provision of Section 177A of the Mississippi Constitution. In a single answer, Boland responded to both complaints, and denied all allegations of misconduct.
¶ 3. A hearing on both complaints was held by the Commission before a three-member committee ("the Committee"). Subsequent to the hearing, the Committee filed separate Findings of Fact, Conclusions of Law and Recommendations as to each complaint. Counsel for the Commission on Judicial Performance objected to the Committee's findings of fact pursuant to Mississippi Commission on Judicial Performance Rule 8(e), as did Boland.
¶ 4. A special meeting was called by the Chairman of the Commission. The Commission unanimously[1] chose to adopt the Committee's Findings of Fact, Conclusions of Law and Recommendations as to each complaint and entered as its own the Findings of Fact, Conclusions of Law and Recommendation. The Commission found by clear and convincing evidence that in Inquiry 2006-84, Boland had committed judicial misconduct pursuant to Section 177A of the Mississippi Constitution and found her actions to be "clearly unlawful." The Commission that recommended Boland be suspended without pay for a period of ninety days and that she be fined $4,250 plus the cost of the proceedings, which was $3,532.06.
¶ 5. In Inquiry 2006-121, the Commission found that Boland admittedly had committed an error, but that "Commission Counsel failed to establish the required proof by clear and convincing evidence...." The Commission dismissed this complaint against Boland.
¶ 6. It is the dismissal of this Complaint in Inquiry 2006-121 with which the Commission Counsel disagrees. Boland contests the recommended sanctions stemming from Inquiry 2006-84.
¶ 7. The issues presented to this Court for review are:
I. Did the conduct of Boland constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended?
II. Should Boland be suspended from office without pay for a period of ninety days and assessed a fine of $4,250, plus the costs of this proceeding, or be subjected to an alternative sanction in light of Boland's no longer serving in office?

STANDARD OF REVIEW
¶ 8. "Our cases are legion on the point that this Court conducts a de novo review of judicial misconduct proceedings, while affording deference to the Commission's recommendations when the Commission's findings are based on clear and convincing evidence." Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008) (citations omitted).

Complaint No. 2006-121
¶ 9. On April 26, 2006, Austin Kinstley, ("Kinstley") appeared before then Judge Boland and pleaded guilty to domestic violence and disturbing the peace. The maximum sentence for domestic violence was a fine of not more than five hundred dollars or imprisonment in the county jail for not more than six *383 months or both. See Miss.Code Ann. Sect. 97-3-7(3) (Rev.2006).
¶ 10. Contrary to the statutory maximum punishment, Boland sentenced Kinstley to "serve twelve months for domestic violence, six months to serve for disturbing the peace, with a drug and alcohol assessment, in-patient treatment, anger management and twelve months probation." A mittimus was also issued on the same day, ordering the sheriff "to receive and safely keep in the county jail Austin Kinstley who has been tried and convicted of Domestic Violence-Simple Assault; Disturbing the Peace and sentenced to serve one year on domestic violence and six months on disturbing the peace and/or pay a fine of $1,000 plus costs." At the hearing before the Committee, Boland produced a separate order dated April 26, 2006, which reflected Kinstley's sentence as twelve months to serve, a fine of $1,000 and twelve months of supervised probation. This order was signed by both Boland and Kinstley. However, the Commission held that this order was not part of the certified court record and that this order had been introduced for the first time at the hearing.[2]
¶ 11. Kinstley's wife, Lisa, who was the victim of Kinstley's domestic abuse, believed Kinstley's sentence was in excess of the statutory maximum, and contacted an attorney about Kinstley's sentence.[3] An attorney for Kinstley then filed a Petition of Certiorari in the Circuit Court for the First Judicial District of Hinds County. The petition averred that Boland had stepped outside her authority by sentencing Kintsley in excess of the statutory maximum. Subsequently, Lisa Kinstley attempted to have the complaint against Boland dropped. However, the complaint was now within the province of the Commission on Judicial Performance, which declined to dismiss the complaint.
¶ 12. Boland asserted to the Committee that when she received notice of the Petition for Certiorari, she realized she had made a clerical error when sentencing Kinstley. Boland testified:
And the way it was written, it was so chaotic because he was making such a huge  he was causing a scene in the courtroom when they  when I gave him the sentence, that I mistakenly sitting right there writing added those together instead of putting total 12 months. I am well aware that the maximum for every single justice court misdemeanor can only be up to a year. That is the definition of the word "misdemeanor," crimes that you can only receive a charge of 12 *384 months. I'm well aware of that. This was a clerical error where I added those two together instead of separating them. They were trying to take him out of the courtroom. My clerk was leaving because they will not stay one minute past 5:00. And I was just trying to get this done.
¶ 13. Boland further testified that she was not aware that she did not possess the authority to issue probation and that this mistake would not be repeated in the future.
¶ 14. Boland testified that many documents are handwritten in justice court, which leaves ample room for error. Boland testified that, typically, unless sending someone to jail, the sentence will be written on the jacket of the file. If someone has been sentenced to serve time, the sentence will be written on the jacket as well as in an order and mittimus. However, since the original file was lost at the justice court level, the jacket was not available to determine what Boland wrote as the original sentence for Kinstley.[4]
¶ 15. Boland testified that she contacted a county court judge and asked for advice about how to correct her clerical error. Boland stated that the county court judge told her she could enter an order correcting a clerical error at any time. Boland testified she scheduled a re-sentencing hearing for October 11, 2006, and there is a notice reflecting same. However, Boland entered the order correcting the sentence on September 12, 2006, prior to holding a hearing. On September 14, 2006, the circuit court entered an order ruling that Kinstley's sentencing order and mittimus, entered by Boland, were beyond the statutory maximum and that Boland had no authority to order probation without suspension of sentence. The circuit court order ruled Kinstley's sentence should be six months for the domestic-violence charge and four months for the disturbing-the-peace charge.[5]
¶ 16. Subsequently, a hearing was held on the formal judicial complaint and, after examining all of the evidence before it, the Commission found that "counsel failed to establish the required proof by clear and convincing evidence that the Respondent has violated the various Canons of the Code of Judicial Conduct and further, that the conduct of the Respondent falls short of violating Section 177A of the Mississippi Constitution of 1890, as amended." While the Commission found that Kinstley was forced to bear the expense of hiring an attorney to file the Petition for Certiorari in circuit court, it found that that Boland's errors were clerical mistakes. The Commission warned Boland "that in the future [she] take care not to make such clerical errors ...," and dismissed the complaint against her.
¶ 17. Commission Counsel now appeals this dismissal. It is Counsel's contention that "there is no question that [Boland] exceeded her authority" and that the Commission's findings "were based on the lack of intentional misconduct" by Boland. Commission Counsel cites a number of cases which he finds analogous to the case *385 at bar. However, while the justice court judges in these cases exceeded their authority by not following statutory mandates, this Court finds the offenses committed by those justice court judges rose above the level of clerical error.[6]
¶ 18. While Boland argues the complaint should be dismissed because the circuit court and Commission were operating under the wrong disturbing-the-peace statute, Boland also argues that she made a clerical error unintentionally and thus, not in bad faith.
¶ 19. While this Court has clarified that it will not accept ignorance or incompetence by judges as a reason for not following the law, it also has made clear that "[j]udges are human, and as such, do on occasion err. Ultimately, it is this Court's constitutional duty to separate honest errors of a judge from willful misconduct, wrongful use of power, corruption, dishonesty, or acts of moral turpitude which negatively reflect upon the judicial branch of government." Miss. Comm'n on Judicial Performance v. Martin, 921 So.2d 1258, 1263 (Miss.2005).
¶ 20. Boland was charged in this matter with violating Canons 1, 2A, 2B, 3B(2), 3B(4), 3B(8) and 3C(1) of the Code of Judicial Conduct and Section 177A of the Mississippi Constitution of 1890, as amended, regarding willful misconduct in office. This Court has ruled:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
In re Quick, 553 So.2d at 524 (quotations and citations omitted).
¶ 21. Absent from the record is clear and convincing evidence that Boland's offense rises to the level of violation of Canons 1, 2A, 2B, 3B(2), 3B(4), 3B(8) and 3C(1) of the Code of Judicial Conduct or Section 177A of the Mississippi Constitution of 1890, as amended. Furthermore, *386 there is no provision in the Mississippi Rules of the Commission on Judicial Performance which allows Commission Counsel to appeal the decision of his own client. Therefore, we defer to the Commission's findings and hold that the Commission was within its authority to dismiss the complaint against Boland in the Kinstley matter.

Complaint No. 2006-084
¶ 22. On September 2, 2005, Mark Moore filed an Affidavit for Bond to Keep the Peace against Brett Prince ("Prince"), alleging that Prince had threatened to physically harm him. On September 9, 2005, Prince was arrested on a warrant issued by then-Justice Court Judge William Skinner. The arrest warrant charged Prince with violation of Mississippi Code Annotated Section 99-23-1 (Rev.2007), the peace bond statute, which reads:
Whenever complaint is made under oath by a credible person to a justice of the peace that any person has threatened to commit an offense against the person or property of another, and such justice is satisfied that there is good reason to fear the commission of such offense, he may issue a warrant to arrest and bring the person complained of before him or some other justice of the peace; and the justice of the peace before whom such person may be brought shall examine into the charge, and if there be just reason to apprehend that such person will commit the offense, he shall be required by the justice to enter into bond in such sum, with such sureties, and for such time not exceeding twelve months, as the justice may prescribe, conditioned to keep the peace toward the person against whom or whose property there is reason to fear the offense may be committed.
¶ 23. Prince was placed under arrest and detained in the Hinds County Detention Center for four and a half days until his initial appearance before then-Judge Boland. While the statute clearly provides for an opportunity to post bond, the record reveals that Prince was given no opportunity to post bond prior to, or at the initial appearance. While Prince's mother, Caren Prince ("Mrs. Prince"), did not elaborate as to with whom she had spoken, she testified she had inquired about posting bond, but was told she would not be able to post bond.
¶ 24. Mrs. Prince attended Prince's court appearance with a family friend, who at the time was a Hinds County Prosecutor. He attended as a friend rather than in a legal capacity. Before Prince appeared, Boland called her court to recess for lunch. When the former prosecutor returned to court following the recess, he informed Mrs. Prince that Boland had contacted him on his cell phone and that Boland stated to him she wanted to have Prince committed to a drug and alcohol facility.
¶ 25. At his initial appearance, Prince testified he was informed by Boland he was "being charged with peace bond." While Prince testified he was confused by the term "peace bond," he pleaded guilty because Boland showed him Moore's affidavit and he admitted the events as recounted by Moore were true. Mrs. Prince testified that Prince said "Guilty, but-" and he was at that point interrupted by Boland, who instructed him not to say anything else. Prince, age twenty-two at the time of the incident, admitted he had been drinking when the incident with Moore occurred. Prince testified he was then questioned by Boland about whether he had any alcohol or drug problems. Prince testified Boland then asked him if he needed drug and alcohol counseling. Neither *387 Prince, nor his mother, believed he needed counseling, but Prince stated Boland told him to "just say yes." Prince then testified that Boland gave him no opportunity to post a bond, but instead gave him the option of going to jail or going to a drug and alcohol treatment facility. Prince stated, "I didn't want to go to either one. But I think I'd rather be in a treatment center than in Raymond Detention Center." Boland testified she issued this sentence "not to keep him in jail," but to get Prince into the newly formed drug court which she was instrumental in forming. Boland testified that at that time, "we didn't know how to get anybody into drug court."
¶ 26. Prince further testified that while at his initial appearance, he was never advised he had a right to a trial, a right to a jury, or a right to bring witnesses forward. Prince stated Boland was "turning the pages [of forms]," and "pointing as she went, you know, saying sign here, sign here. I had no idea what I was signing." Prince testified that after the conversation about his release to a rehabilitation facility, he believed he was signing release papers. Prince testified that the documents which he was signing were not explained to him by Boland. The documents Prince signed included a waiver-of-right-to-an-attorney form. Although Prince does have the ability to read and write, Prince testified the waiver-of-attorney form was not read or explained to him and he did not understand he was giving up his right to an attorney. Prince admitted it was "a careless mistake for me not reading over the paper. But I was nevernobody explained to me that by signing this I was waiving a right to an attorney."
¶ 27. Contrary to Prince's testimony, Boland testified that she read Prince the waiver-of-attorney form and that she believed Prince understood he was waiving the right to an attorney. Boland stated Prince "willingly signed the form."
¶ 28. After pleading "guilty to violation of the peace bond statute," Prince was sentenced to one year in jail, which would be suspended upon Prince's entry into a court-certified drug treatment facility. The full cost of the treatment was to be the amount of Prince's fine.[7]
¶ 29. Prince was then incarcerated for two additional nights after his initial appearance. On September 15, 2005, Prince was released to Country Oaks Recovery Center. Prince testified he stayed at Country Oaks for approximately forty-two days. Prince was then asked to leave Country Oaks for a rule violation. Prince testified that as part of the program at Country Oaks, he was allowed to leave and go to work. Prince stated that one day he went to his parents' home instead of work, which was forbidden by the facility. A neighbor to the Princes called Country Oaks to report Prince was seen at home. Prince was then asked to leave the facility on or about October 19, 2005.
¶ 30. Boland testified that an employee of Country Oaks, who was also on her drug court team, called on October 19, 2005, to let her know that Prince had violated his purported "probation."[8] On that same day, Boland issued an order which charged Prince with probation violation. The order reads:
This case having come on for trial, and the Defendant having been charged with *388 violating probation and the State and the Defendant announcing ready for trial. The Court having heard the evidence and testimony finds the Defendant guilty. The Defendant is therefore ordered six months in jail.
¶ 31. A mittimus was attached wherein the sheriff was "commanded to receive and safely keep Brett Prince in the county jail." Boland testified she believed that "as soon as someone violated a probation order, they were instantly picked up." Mrs. Prince testified that Prince was not present on the day Boland issued the order sentencing Prince to six months. Boland testified that she could not recall whether Prince was in the courtroom that day. Testimony from Prince indicates that while he did not speak in open court, he was in the courtroom that day to meet his probation officer. Prince testified that he was called to the bench by Boland and she ordered him to serve six months at the Hinds County Penal Farm for violating his probation, and he was then taken back to jail immediately. The Commission found there was no announcement by anyone that they were ready for trial, no evidence submitted and no testimony given. On October 19, 2005, Boland set a hearing date for October 26, 2005, to determine conditions for Prince's release.
¶ 32. At this juncture, Prince's parents hired an attorney for their son. Prince's parents, grandparents, and counsel appeared on October 26, but were told there was no hearing scheduled for Prince on the docket. Prince was not brought to the courtroom that day. While no hearing was held, Prince's parents, grandparents, counsel for the Princes and representatives of Country Oaks/Good Samaritan facility met with Boland to discuss options for Prince. During this conversation, Boland asked Mrs. Prince if she had attended Al-Anon[9] and when Mrs. Prince responded "no," Boland informed Mrs. Prince that "if she could, she would arrest [her] and hold [her] in contempt of court." Boland told Prince's parents and grandparents they were "enablers," that "they were [Prince's] problem" and that "Judge Skinner told her that the neighborhood was terrified of [Prince]." Boland testified she thought she had a right to say this based on evidence of "what [Prince] told me about his history with his parents and the evidence that was given to me from the treatment facility and from Judge Skinner talking to me about all of the problems that that family had had with [Prince]."
¶ 33. Subsequent to this discussion, Boland stated that she would issue an order setting bail and conditions of release. Bail for Prince was set at $5,000, and the conditions of Prince's release were set as follows:
1) Prince was ordered to participate in daily community service.
2) Prince was restricted from leaving the State of Mississippi.
3) A curfew of 7:00 p.m. was established.
4) No possession of firearms, drugs or alcohol was allowed.
5) Prince was to have psychiatric, medical and emotional treatment at his own expense at the Good Samaritan Center for substance abuse.
6) Prince was to undergo random urine analysis as directed by the Good Samaritan Center.
¶ 34. Prince was further ordered to live with his grandparents and to have no contact with his parents, although his parents had not requested a no-contact order. Boland and counsel for Prince signed this Order Setting Bail and Conditions of Release. *389 Counsel for Prince testified he signed the order only because he believed Prince would be immediately released and he could file an appeal in circuit court.
¶ 35. However, that afternoon, Boland had Prince return to court without his attorney present, and she rescinded the release order. Prince's mother testified Boland told Prince she was not comfortable releasing him and was rescinding her earlier order and sentencing him to six months at the Hinds County Penal Farm. The record reveals no written explanation for why Boland rescinded her order, nor does Boland's testimony reveal a reason. Mrs. Prince testified that upon learning her son would remain incarcerated, she contacted counsel for Prince. When counsel returned that afternoon, he testified he was "rebuffed by Boland ... was not allowed to speak. Was not allowed to interject my thoughts as to what needed to be done with Mr. Prince." Counsel testified he was very upset Prince was not being released and Boland testified he threatened to file a judicial performance complaint against her.
¶ 36. On November 4, 2005, Boland issued an Order of Release for Prince, conditioned upon his payment of a $1,000 bond or twelve months in jail. The bond set was $500 in excess of the statutory maximum. See Miss.Code Ann. § 99-23-13 (Rev.2007). Prince was either incarcerated or at Country Oaks Treatment Center from September 9, 2005, until November 4, 2005. Prince's mother testified that, all totaled, Prince's parents and grandparents spent approximately $6,000 to have Prince released.
¶ 37. Boland asserts to this Court that the entire Prince incident stems from the fact that the peace bond statute is confusing not only to her, but to all justice court judges. Boland testified she received no training on peace bonds, but that she had consulted Judge Skinner about whether she could place conditions on a peace bond and she testified Judge Skinner told her she could. At the hearing before the Commission, Boland called Judge Skinner to testify as to his knowledge of peace bonds. Judge Skinner testified that every justice court judge with whom he had spoken had a different theory on what a peace bond is and whether it is civil or criminal in nature. Judge Skinner likened a peace bond to a protective order. When asked if there "is any provision under the peace bond statutes, to your knowledge, that would allow a judge to sentence someone to a year in jail," Judge Skinner testified "[n]ot from the statutes I've looked at on peace bonds." And while Judge Skinner stated a that peace bond is a "strange bird," he testified "there is no crime of peace bond." Boland also called David Scott, an attorney with the Mississippi Attorney General's office, who has done some training of justice court judges. Scott related that the peace bond statute is confusing for justice court judges. However, when asked if there was a crime of peace bond, Scott testified there was not and that if a party posts bond to the satisfaction of the judge, then there is no authority for a justice court judge to impose jail time.
¶ 38. In its Findings of Fact, Conclusions of Law and Recommendations, the Commission stated that Boland repeatedly entered unlawful orders resulting in the incarceration of Mr. Prince, not to mention to trauma placed on him and his family. The Judge had no authority, statutorily or otherwise, to refuse to set bond, nor any authority to sentence Mr. Prince to one year in jail, six months in jail or for any time in jail at all. Boland was without any authority to send Mr. Prince to any drug treatment facility or to require any other of the incredibly restrictive terms of his *390 "probation." There is not nor has there ever been a crime of "peace bond."
¶ 39. The Commission found that Boland had violated Mississippi Code Annotated Sections 99-23-1, 99-23-5 and 99-23-13 pertaining to peace bonds, which requires clarification. Her acts exceeded the authority conferred upon her by these statutes, which resulted in the violation. The Commission further found Boland had violated the following Canons of the Code of Judicial Conduct:
Canon 1: A judge shall uphold the integrity and independence of the judiciary.
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canons 2(A) and 2(B): A judge shall avoid impropriety and the appearance of impropriety in all activities.
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
Canons 3(B)(2), 3(B)(4), 3(B)(8) and 3(C)(1): A judge shall perform the duties of judicial office impartially and diligently.
3(B)(2). A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
3(B)(4). Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control.
3(B)(8). A judge shall dispose of all judicial matters promptly, efficiently and fairly.
3(C)(1). A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.
Lastly, Boland was charged with violating Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 40. It is clear that Boland exceeded all parameters of her authority as a judge. In Mississippi Commission on Judicial Performance v. Neal, Justice Court Judge Neal sentenced two defendants in excess of the statutory maximum, as well as presided over a case in which he did not have jurisdiction. See Miss. Comm'n on Judicial Performance v. Neal, 774 So.2d 414 (Miss.2000). While Judge Neal stated he was unaware he had exceeded his authority, this Court held, "Judge Neal's zealousness and judicial misbehavior constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute...." Id. at 417. Based on the facts *391 presented, the Commission's finding that Boland violated Mississippi Code Annotated Sections 99-23-1, 99-23-5, and 99-23-13; Canons 1, 2A, 2B, 3(B)(2), 3(B)(4), 3(B)(7), 3(B)(8), 3(C)(1) of the Code of Judicial Conduct; and Section 177A of the Mississippi Constitution is clearly and convincingly supported by the record.
¶ 41. The initial recommendation of the Commission was for Boland to be suspended from office without pay for a period of ninety days and fined $4,250,[10] plus the costs of these proceedings. However, since the recommendation of the Commission was made, Boland was defeated at the polls. Commission Counsel recommends that in lieu of suspension from office, Boland should be subject to an additional fine of $13,889.75, which is equal to a ninety-day suspension without pay based on the statutory annual salary of a Hinds County Justice Court Judge of $55,559. This Court previously has found authority to sanction a judge subsequent to that judge leaving office. See Miss. Comm'n on Judicial Performance v. Boland, 975 So.2d 882, 898 (Miss.2008); Miss. Comm'n on Judicial Performance v. Former Judge U.U., 875 So.2d 1083 (Miss.2004).
¶ 42. In determining the appropriateness of Boland's sanctions, we will apply the factors set forth by this Court in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss. 2004).

1) The length and character of the judge's public service.
¶ 43. Boland was elected in November of 2003 and served one term as justice court judge. Before becoming a judge, Boland was in the private practice of law and then Boland served a six-year term as an associate commissioner of the Mississippi State Tax Commission. Boland has also been instrumental in launching and presiding over the first justice court drug court in the state. Additionally, Boland testified she is involved in volunteering for many nonprofit organizations in her community.

2) Whether there is any prior case law on point.
¶ 44. While this Court has had numerous cases which have dealt with judges exceeding their authority, there are no cases factually similar to the case sub judice. However, in Mississippi Commission on Judicial Performance v. Perdue, 853 So.2d 85, 98 (Miss.2003), Judge Perdue was suspended from office and fined for acting outside the scope of her authority and depriving a parent custody of her child. In Mississippi Commission on Judicial Performance v. Lewis, Justice Court Judge Lewis violated statutory mandates and went outside his authority, and this Court found Judge Lewis's conduct constituted willful misconduct in office. See Miss. Comm'n on Judicial Performance v. Lewis, 830 So.2d 1138 (Miss.2002). See also Miss. Comm'n on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000); Miss. Comm'n on Judicial Performance v. Emmanuel, 688 So.2d 222 (Miss.1996).

3) The magnitude of the offense and the harm suffered.
¶ 45. The maximum penalty Boland initially was authorized to issue was the posting of a $500 peace bond. However, Prince was incarcerated without authority of law, either in the Hinds County Detention Center or in drug treatment from September 9, 2005, until November 4, 2005. In order to have Prince released, the Prince family expended approximately *392 $4,250 in attorney's fees, plus the costs of the drug treatment facility. The Prince family testified they suffered emotional, as well as financial, harm.

4) Whether moral turpitude was involved.
¶ 46. This Court has held, "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006) (citations omitted).
¶ 47. Boland testified that she did not act in bad faith when sentencing Prince and that she was genuinely confused by the peace bond statute. Boland testified she had received no training regarding peace bonds. Boland asserts to this Court that she is now aware she cannot send anyone to jail on a peace bond without giving them an opportunity to post bond and that she currently avoids dealing with peace bonds if at all possible.
¶ 48. The Commission submits to this Court that Boland's actions constituted moral turpitude, as her conduct "certainly abused the judicial process, failed to revere the law and the judicial system and clearly failed to uphold the dignity and respect of the judiciary." Evidence abundantly shows misfeasance, but there is no evidence of malfeasance. While we find Boland's actions to be an incredible abuse of judicial authority, we do not find that her actions constitute moral turpitude as defined by this Court in Sanford. See Sanford, 941 So.2d at 217.

5) Whether the misconduct is an isolated incident or evidences a pattern of misconduct.
¶ 49. The Commission asserts to this Court that Boland's behavior evidences a pattern of misconduct, based upon a previous sanction by this Court. On February 28, 2008, this Court ruled that Boland should be publicly reprimanded and fined for a number of inflammatory statements she made at a National Drug Court Institute training conference. See Miss. Comm'n on Judicial Performance v. Boland, 975 So.2d 882 (Miss.2008).
¶ 50. We find that the previous misconduct, when considered with the misconduct sub judice, evidences a pattern. The pattern shows an unfitness for the office of judge at any level. But for Boland's failed bid for re-election, her combined violations would have led to removal from office, as discussed infra.

6) The presence or absence of mitigating circumstances.
¶ 51. Boland has maintained that the Prince matter is a mistake due to her misunderstanding of the statute. However, when her mistake was presented to her by counsel for Prince, she refused to acknowledge her mistake and again sent Prince back to jail. Boland refuses to accept responsibility for the harm she caused Prince and members of the Prince family.
¶ 52. Boland was not only a justice court judge, but a licensed attorney in this state. Although argument was presented that Mississippi Code Annotated Section 99-23-1 is confusing, it doesn't take a law degree, or for that matter, a high school diploma, to read that incarceration is not provided for in the statute. Boland, acting on information that Prince "terrorized the neighborhood," used her power as a judge to incarcerate him in jail or confine him to a drug treatment facility. Boland freely acknowledged that she thought peace bonds would be a good way to get people into her drug court. Incarcerating Prince *393 as opposed to requiring him to post bond was clearly an abuse of Boland's power as a judge.
¶ 53. Commission Counsel requests that Boland should be subject to an additional fine of $13,889.75, which is equal to a ninety-day suspension without pay. Boland cannot forfeit a salary which she no longer receives. In addition, the Commission's recommendation is an option that is constitutionally unavailable. "While giving great deference to the Commission's findings, we are also charged to render independent judgment." Miss. Comm'n on Judicial Performance v. Perdue, 853 So.2d 85, 88 (Miss.2003) (citation omitted).
¶ 54. The Mississippi Constitution allows this Court to: "remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this State...." Miss. Const. art. 6, § 177A. As Boland is no longer in office, the penalties are limited by the Constitution. Since the public removed her from office before this Court could act on the Commission's recommendation, the remaining options are only to fine or publicly censure or reprimand her. Accordingly, we find that Boland should be publicly reprimanded and that the sanction for Boland is limited to a fine of $4,250, as well as the costs of these proceedings which the Commission states is $3,532.06. See M.R.A.P. 36.

CONCLUSION
¶ 55. Regarding Inquiry 2006-121, we find that Boland's conduct does not rise to the level of willful misconduct in office or conduct prejudicial to the administration of justice. We affirm the Commission's dismissal of the complaint in the Kinstley matter.
¶ 56. Regarding Inquiry 2006-084, we find Boland abused the power of her judicial office by exceeding the powers granted in Mississippi Code Annotated Sections 99-23-1, 99-23-5, and 99-23-13; Canons 1, 2A, 2B, 3(B)(2), 3(B)(4), 3(B)(7), 3(B)(8), 3(C)(1) of the Code of Judicial Conduct; and Section 177A of the Mississippi Constitution. As this Court has determined, the Constitution limits the penalties. Accordingly, Boland shall be publicly reprimanded and assessed with a fine and costs in the amount of $7,782.06, for which let execution issue.
¶ 57. FORMER JUSTICE COURT JUDGE NICKI M. BOLAND, JUSTICE COURT JUDGE FOR HINDS COUNTY, DISTRICT ONE, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT WHEN THE VENIRE PANEL MEETS BY THE PRESIDING JUDGE OF THE HINDS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL AND IS ASSESSED A FINE OF $4,250 AND COSTS OF THESE PROCEEDINGS IN THE AMOUNT OF $3,532.06.
CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. SMITH, C.J., WALLER AND DIAZ, P.JJ., AND EASLEY, J., NOT PARTICIPATING.
NOTES
[1] One member did not participate.
[2] The original justice court file in the Kinstley matter has been lost, as will be discussed infra. There is no explanation by either party as to the means by which this order was produced.
[3] Kinstley's attorney, relying on misinformation from Kinstley's wife, believed Kinstley was convicted of disorderly conduct under Mississippi Code Annotated Section 97-35-3, wherein the maximum sentence was four months or less. He relied upon this misinformation in filing a Petition for Certiorari with the circuit court and in filing a judicial performance complaint against Boland. However, Kinstley was actually charged with violating Mississippi Code Annotated Section 97-35-15, which carries a penalty of six months or less, thereby making Kinstley's sentence for disturbing the peace correct. Boland made the Commission aware of this mistake and asked that they dismiss the Kinstley case. In its Findings of Fact, Conclusions of Law, and Recommendations, the Commission stated that "[p]rior to the hearing the Commission admitted error when it heretofore alleged the maximum penalty for creating a disturbance was four months when there is indeed an additional/alternate statute which allows for six month penalty." However, the Commission continued to assert Kinstley was sentenced in excess of the domestic violence statute.
[4] On the date Boland entered an order correcting the clerical error, the Hinds County Justice Court Clerk discovered the Kinstley file was missing. The original file has never been located. The file used by Kinstley's attorney and by the Committee and the Commission was re-created by the Justice Court Clerk's office and the Clerk stated she "could not be 100% sure that the orders were entered on the dates signed by Boland."
[5] The circuit court also relied upon the incorrect statute when it found Kinstley's sentence for disturbing the peace was excessive and re-sentenced Kinstley to four months for disturbing the peace, under the disorderly conduct statute.
[6] See Miss. Comm'n on Judicial Performance v. Lewis, 830 So.2d 1138,1143 (Miss.2002) (Judge Lewis was publicly reprimanded and fined, and this Court found "Judge Lewis should have known that his actions were not legal and his supporting arguments are tenuous."); Miss. Comm'n on Judicial Performance v. Neal, 774 So.2d 414 (Miss.2000) (emphasis added) (Judge Neal was publicly reprimanded and fined for assigning a fine outside the statutory maximum and exceeding his jurisdiction by presiding over a felony charge). Miss. Comm'n on Judicial Performance v. Jones, 735 So.2d 385 (Miss. 1999) (emphasis added) (Judge Jones was publicly reprimanded and fined for reducing DUI charges to lesser charges on five different occasions); Miss. Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075 (Miss. 1996) (emphasis added) (Judge Fletcher was publicly reprimanded and assessed costs for incarcerating a defendant in excess of the statutory maximum without notice or hearing).
[7] Prince's mother testified she paid the facility $750 upon Prince's entry, with $250 more due in thirty days.
[8] Boland testified she had relied on the phone call from the Country Oaks employee. Boland did not receive written documentation of Prince's violation of the rules of Country Oaks until October 26, 2005.
[9] Al-Anon is an organization for family members of persons addicted to alcohol.
[10] The fine amount is the amount of Prince's attorney's fees, plus two monthly payments the Princes expended for drug treatment.