ON MOTIONS FOR REHEARING

CARLSON, Presiding Justice,
for the Court.
¶ 1. The motion for rehearing filed by Solomon C. Osborne is denied. However, the motion for rehearing filed by the Mississippi Commission on Judicial Performance is granted, in part. Thus, the original opinions are withdrawn, and these opinions are substituted therefor.
¶ 2. In this judicial-discipline case, the Mississippi Commission on Judicial Performance (“the Commission”) recommends to this Court that, based on his judicial misconduct, Solomon Osborne, former County Court Judge for Leflore County, should be removed from office, restrained from ever seeking judicial office again, and assessed with costs of this proceeding.
FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶ 3. On September 13, 2006, while campaigning for reelection as a county court judge for Leflore County, Judge Solomon C. Osborne spoke before the Greenwood Voters League, a predominantly African-American political organization. Portions of his speech appeared the next day in the local newspaper, The Greenwood Commonwealth. In an article entitled: “Osborne: Blacks not where we should be. County judge says progress has been made, more is needed,” the newspaper quoted Judge Osborne as stating:
White folks don’t praise you unless you’re a damn fool. Unless they think they can use you. If you have your own mind and know what you’re doing, they don’t want you around.[1]
¶ 4. Forty-eight complaints were filed with the Commission regarding Judge Osborne’s comments. On February 12, 2007, the Commission filed a formal complaint against Judge Osborne, alleging willful misconduct in office and conduct prejudi *110 cial to the administration of justice which brings the judicial office into disrepute, thus causing such conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 5. Judge Osborne, acting as his own attorney,[2] answered the complaint and denied making the statements attributed to him by The Greemvood Commonwealth. He moved the Commission to dismiss the complaint on the basis that its charge violated the First and Fourteenth Amendments of the United States Constitution and comparable provisions of the Mississippi Constitution, averring further that the Commission’s complaint was politically and racially motivated.
¶ 6. The Commission referred the matter to a duly-constituted committee, which held a formal hearing. Both parties agreed to dispense with an evidentiary hearing on the facts, allowing instead an agreed statement of the facts to be entered into evidence for a review, finding, and proposed recommendation. The committee concluded the following:
[T]his Tribunal is convinced by clear and convincing evidence that Judge Solomon C. Osborne, has violated the following Canons, Statute, and Section 177A of the Mississippi Constitution of 1890, as amended, to-wit:
Canon 1. By making a public inflammatory, derogatory statement about all people of the White race, thereby eroding public confidence in the integrity and independence of his Court. Canon 2.(A) <& (B) By making a public spectacle of himself and thereby demeaning the prestige of his office. Canon 3.(B)(5) By publicly announcing manifest bias and prejudice based on race.
Canon 5.(A)(1)(a) By maintaining membership in, attending meetings, and promoting the agenda of a political organization.
Statute: Section 97-9-59 Mississippi Code, 1972, Ann. (Perjury) By making an oath to an untrue, false and improper statement when Solomon C. Osborne knew his statement was untrue and false.
Section 177A of the Mississippi Constitution of 1890. By conducting himself in a way which constitutes wilful misconduct in office and conduct which is prejudicial to the administration of justice, bringing his judicial office into disrepute.
¶ 7. The committee filed its findings of fact, conclusions of law, and recommendation with the Commission on February 15, 2008. The Commission accepted and adopted the Committee’s recommendation and thereafter entered its findings of facts, conclusions of law, and recommendation on March 18, 2008. The Commission found that Judge Osborne’s behavior violated Canons 1, 2(A), 2(B), 3(B)(5), and 5(A)(1)(a) of the Mississippi Code of Judicial Conduct, and Section 97-9-59 of the Mississippi Code of 1972, Annotated. The Commission has recommended to this Court that Judge Osborne be removed from office, restrained from ever seeking judicial office again, and assessed with costs of this proceeding in the amount of $731.89.
DISCUSSION
¶ 8. Judicial misconduct proceedings are reviewed de novo, giving considerable deference to the findings, based on clear and convincing evidence, of the recommendations of the Commission. Miss. Comm’n on Judicial Performance v. Bo *111 land, 975 So.2d 882, 888 (Miss.2008) (Boland, I) (citing Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 874 (Miss.2000)). This Court, however, is obligated to conduct an independent inquiry. Id. (citing Miss. Comm’n on Judicial Performance v. Neal, 774 So.2d 414, 416 (Miss.2000)). Though the Commission’s findings are considered, this Court is not bound by its findings. Miss. Comm’n on Judicial Performance v. Whitten, 687 So.2d 744, 746 (Miss.1997).
I.
¶ 9. The role of the judiciary is central to the concept of justice and the rule of law. The Mississippi Code of Judicial Conduct, through its canons, was established to help ensure the public’s trust and confidence in the state’s judicial system, and to provide guidance to judges in maintaining the principal standards of judicial conduct both on and off the bench. This Court is vested with the authority to discipline any judicial officer for violation of a judicial canon. Miss. Const. art. 6, § 177A. Enforcement of the canons is essential to the purpose they serve.
¶ 10. Judge Osborne claims First Amendment protection for his speech and for his attendance before the Greenwood Voter’s League. He challenges the constitutionality of the Commission’s recommendation that he be punished.
¶ 11. The Commission responds, arguing that the racial overtones of Judge Osborne’s comments cast doubt on his integrity, independence, and ability to be fair and impartial in all matters that come before his court. The Commission asserts that application of the judicial canons in this case is narrowly tailored to serve a compelling state interest, thus Judge Osborne’s conduct does not enjoy First Amendment protection.

A. Political organization

¶ 12. Beginning with the Commission’s finding that Judge Osborne violated Canon 5(A)(1)(a) by maintaining membership in, attending meetings of, and promoting the agenda of a political organization, we need not address Judge Osborne’s constitutional argument.[3] Based on the record before us, Judge Osborne’s attendance before the Greenwood Voters League did not violate section 5(A)(1)(a), or any other section of the canons.[4] Canon 5(A)(1) reads in full, as follows:
Except as authorized in Sections 5B(2), 5C(1) and 5C(2), a judge or candidate for election to judicial office shall not:
(a) act as a leader or hold an office in a political organization;
(b) make speeches for a political organization or candidate or publicly endorse a candidate for public office;
(c) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other political functions.
(Emphasis added.)
¶ 13. The Commission’s finding rests solely on what transpired during rebuttal *112 at the formal hearing for this matter. A committee member queried counsel for Judge Osborne about the Greenwood Voters League. The attorney explained he thought it could be fairly characterized as a non-dues, political organization that meets weekly. When the committee member asked how one becomes a member, the attorney responded, “Just by attending a meeting.” The committee member then asked if Judge Osborne therefore was a member. The attorney said, “Yes.” No further questions were asked about the Voters League.
¶ 14. The Commission has misinterpreted and misapplied Canon 5. The canon does not prohibit membership “per se” in a political organization.[5] Rather, as denoted by section 5A(1) and its subsections, the canon prohibits judicial incumbents and judicial candidates alike from engaging in certain inappropriate political activity normally associated with such organizations. See also sections 5B(2), 5C(1), 5C(2) and 5D.
¶ 15. There is no evidence in the record that Judge Osborne acted as a leader for, or held an office in, the Greenwood Voters League, in violation of section 5A(1)(a). Likewise, there is no indication that Judge Osborne was making a speech on behalf of the Voters League, as prohibited by section 5A(1)(b). Additionally, although Judge Osborne admittedly attended political gathering, ordinarily a violation under 5A(1)(c), the record evinces only that he was there as a judicial candidate running for reelection. Section 5C(1) expressly permits incumbent judges to attend and speak to political gatherings on their own behalf while candidates for election or reelection.

B. Political speech

¶ 16. The subject of Judge Osborne’s inflammatory statements was his criticism of a Caucasian mayor’s appointment of two local African-Americans to the Greenwood Election Commission. While these statements admittedly were made by Judge Osborne during a year when he was campaigning for reelection as the incumbent county court judge, we do not find that these invidious statements constitute protected political speech under the First Amendment of the United States Constitution, or Article 3, Section 13 of the Mississippi Constitution of 1890, as amended.
¶ 17. The United States Supreme Court addressed the issue of protected political speech in Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). White stands for the proposition that in states which choose to elect their judges and which have judicial canons prohibiting judicial candidates “from announcing their views on disputed legal and political issues” such canons violate the First Amendment. White, 536 U.S. at 788, 122 S.Ct. 2528. In White, the Court had before it a factual scenario in which a candidate for associate justice of the Minnesota Supreme Court “distributed literature criticizing several Minnesota Supreme Court decisions on issues such as *113 crime, welfare and abortion.” Id. at 768, 122 S.Ct. 2528. In discussing the procedural history of this case, the Court noted that the Eighth Circuit Court of Appeals recognized that “the announce clause both prohibits speech on the basis of its content and burdens a category of speech that is ‘at the core of our First Amendment freedoms’ — speech about the qualifications of candidates for public office.” Id. at 774, 122 S.Ct. 2528 (citing Republican Party v. Kelly, 247 F.3d 854, 861, 863 (8th Cir. 2001)).
¶ 18. Traditionally, this Court, in assessing whether speech by a member of the judiciary is protected political speech, has applied the two-prong test promulgated in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Applying the Pickering test, a reviewing court looks to whether, in light of the content, form, and context of the speech at issue, the speech addresses a matter of legitimate public concern. Miss. Comm’n on Judicial Performance v. Boland, 975 So.2d 882, 891 (Miss.2008) (citing Scott v. Flowers, 910 F.2d 201, 210 (5th Cir.1990)). If the speech is not deemed to be a matter of legitimate public concern, the inquiry ends, otherwise, the next step of the inquiry is to balance the First Amendment rights of the public employee against the government’s interest. Boland I, 975 So.2d at 891.
¶ 19. In Boland I, this Court found that Judge Boland was not engaging in political speech when she remarked on the ignorance of members of the Hinds County Board of Supervisors, criticized the educational background and demeanor of justice court judges, told a participant to “get the hell out” of the room, and remarked that her African-American constituents in Hinds County could “go to hell.” Id. In applying the two-prong Pickering test, this Court held “[sjince Judge Boland’s comment was not made within the content, form or context of a matter of legitimate public concern, no further analysis is necessary by this Court. Accordingly, we find that Judge Boland’s comment was not protected by the First Amendment.” Bo-land I, 975 So.2d at 892. In doing so, this Court distinguished Judge Boland from the judge in Mississippi Commission on Judicial Performance v. Wilkerson, 876 So.2d 1006 (Miss.2004). Boland I, 975 So.2d at 892. This Court made that distinction on the basis that the judge in Wilkerson wrote a letter to a newspaper that contained commentary on his religious views on homosexuality without ever identifying himself as a judge. Boland I, 975 So.2d at 892 (citing Wilkerson, 876 So.2d at 1008). “Without his permission, a radio show later aired a conversation Wilkerson had with a reporter concerning the letter.” Id. (citing Wilkerson, 876 So.2d at 1008).
¶ 20. We find today’s case comparable to the facts in Boland I inasmuch as Judge Osborne’s commentary on Caucasian officials and their African-American appointees in his jurisdiction is not worthy of being deemed a matter of legitimate political concern in his reelection campaign, but merely an expression of his personal animosity. Therefore, inasmuch as Judge Osborne’s comments “[were] not made within the content, form or context of a matter of legitimate public concern, no further analysis is necessary by this Court.” Boland I, 975 So.2d at 892. Likewise, this case is distinguishable from Wilkerson in that Judge Osborne was appearing at the meeting in his capacity as a judge-this was not a personal letter to the editor of his local paper. On the other hand, speaking before a group of his constituents, Judge Osborne no doubt expressed his disdain for the local Caucasian mayor and his African-American appointees in making his inflammatory remarks; however, he did not *114 limit his remarks to commentary on the mayor and the mayor’s appointments. Judge Osborne went further:
White folks don’t praise you [African-Americans] unless you’re a damn fool. Unless they think they can use you. If you have your own mind and know what you’re doing, they don’t want you around.
As we found in Boland I, Judge Osborne’s comments “were disparaging insults and not matters of legitimate public concern.” Boland I, 975 So.2d at 892. Importantly, today’s case is distinguishable from White in that Judge Osborne’s disparaging insults went well beyond the realm of protected campaign speech expressing views on disputed legal and political issues and discussing the qualifications of the judicial office for which Judge Osborne was campaigning.
¶ 21. As a postscript on this issue, we direct our judges to the commentary under Canon 2 of the Mississippi Code of Judicial Conduct, which states in pertinent part:
Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge’s conduct that might be reviewed as burdensome by the ordinary citizen and should do so freely and willingly.
¶ 22. No one is compelled to serve as a judge, but once an individual offers himself or herself for service, that individual accepts the calling with full knowledge of certain limitations upon speech and actions in order to serve the greater good. A calling to public service is not without sacrifice, including the acceptance of limitations on constitutionally granted privileges. This principle is deeply rooted in many areas of government service. For example, members of the Armed Forces are limited in matters pertaining to outside employment. See 10 U.S.C. § 973(a) 1980. Likewise, some civil service employees are restricted from “actively participating] in political activity in any primary or election in a municipality where he is employed .... ” Miss.Code Ann. § 21-31-27 (Rev.2007). See also Miss.Code Ann. § 21-31-75 (Rev.2007).
¶ 23. In the end, we find that Judge Osborne’s disparaging remarks were not protected speech under either our federal or state constitution. Accordingly, we agree with the Commission’s findings that Judge Osborne’s remarks violated Canons 1, 2(A) & (B), and 3(B)(5), thus causing the judge’s conduct to be actionable under Section 177A of the Mississippi Constitution of 1890.
II.
¶ 24. The Commission asserts that, when confronted with the complaint alleging judicial misconduct for his inappropriate remarks, Judge Osborne, under oath, knowing that the allegations were true and that he had in fact said what was reported in the newspaper, purposely denied making the remarks. The Commission further asserts that, by entering into an agreed statement of the facts in lieu of an eviden-tiary hearing, Judge Osborne conceded that the remarks were made. The Commission, therefore, contends that Judge Osborne committed perjury in violation of Mississippi Code Annotated Section 97-9-59, which provides in pertinent part:
Every person who shall wilfully and corruptly swear, testify or affirm falsely to any material matter under oath, affirmation or declaration legally administered in any matter, cause or proceeding pending in any court of law or equity, or *115 before any officer thereof, or in any case where an oath or affirmation is required by law or is necessary for the prosecution or defense of any private right or for the ends of public justice, or in any matter or proceeding before any tribunal or officer created by the Constitution or by law, or where any oath may be lawfully required by any judicial, executive, or administrative officer, shall be guilty of perjury....
Miss.Code Ann. § 97-9-59 (Rev.2006).
¶ 25. In Re Collins, quoting 83 C.J.S. Stipulations Section 25, held:
[An] Agreed Statement of Facts on which the parties submit [a] case for trial is binding and conclusive on them, and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, or the truth, competency or sufficiency of any admission contained in the Agreed Statement or to maintain a contention contrary to the Agreed Statement or be heard to claim that there are other facts that the Court may presume to exist, or to suggest, on appeal, that the facts were other than stipulated, or that any material fact was omitted.
In re Collins, 524 So.2d 553, 561 (Miss. 1987) (citing 83 C.J.S. Stipulations § 25 (1954)).
¶ 26. Lying under oath is an abuse of the judicial process which Judge Osborne was elected to uphold. Perjury is not a matter to be taken lightly, nor will it be tolerated by this Court. A proceeding before the Commission on Judicial Performance is no different from a trial and “[a] trial is a proceeding designed to be a search for the truth.” Sims v. ANR Freight System, Inc., 77 F.3d 846, 849 (5th Cir.1996). “When a party attempts to thwart such a search, the courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit.” Jones v. Jones, 995 So.2d 706, 711-12 (Miss.2008) (quoting Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990 (Miss.1999)).
¶ 27. The Commission on Judicial Performance contends to this Court that Judge Osborne committed perjury pursuant to Mississippi Code Section 97-9-59. However, the Commission never formally charged Osborne with perjury. A formal charge is inquired. A verdict without a formal complaint is no different from a criminal trial without an indictment. Therefore, in the absence of a formal complaint and a hearing on the merits, this Court lacks the authority to accept the finding of the Commission on the perjury count.
¶ 28. For the reasons stated, the Commission’s recommendation that Judge Osborne be sanctioned for committing perjury must be rejected.[6]
III.
¶ 29. Having accepted and agreed with the Commission’s finding that Judge Osborne’s remarks were in violation of Canons 1, 2(A) & (B), 3(B)(5), thus causing such conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended, we now turn to a discussion of appropriate sanctions.
¶ 30. In accordance with Section 177A of the Mississippi Constitution and Rule 10 of the Rules of the Commis *116 sion on Judicial Performance, as interpreted by this Court, the Commission is charged with recommending disciplinary sanctions, and the Court, based upon a review of the entire record, must determine the appropriate sanction. In fact, in the end, this Court alone has the power to impose sanctions. Miss. Comm’n on Judicial Performance v. Osborne, 977 So.2d 314, 324 (Miss.2008) (citing In re Quick, 553 So.2d 522, 527 (Miss.1989)). The primary purpose of judicial sanctions is not punishment of the individual judge but “to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses.” Miss. Comm’n on Judicial Performance v. Guest, 717 So.2d 325, 329 (Miss.1998) (citing In re Harned, 357 N.W.2d 300, 302 (Iowa 1984)). The sanctions available to us when disciplining a judge include: (1) removal from office; (2) suspension from office; (3) fine; and (4) public censure or reprimand. Miss. Comm’n on Judicial Performance v. Osborne, 977 So.2d 314, 324 (Miss.2008), cf. Miss. Comm’n on Judicial Performance v. Teel, 863 So.2d 973, 975 (Miss.2004) (citing Miss. Const. art. 6, § 177A); Miss. Comm’n on Judicial Performance v. Walker, 565 So.2d 1117, 1128-32 (Miss.1990) (compiling list of judicial performance sanctions in Mississippi).
¶ 31. The appropriateness of sanctions is weighed based on the following factors, often referred to by this Court as the Gibson factors: (1) the length and character of the judge’s public service; (2) whether there is any prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances. Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004).[7] The Commission recommended that Judge Osborne be removed from office. However, since the institution of the subject proceedings, Judge Osborne has resigned from the bench.

A. The length and character of the judge’s public service.

¶ 32. Judge Osborne was appointed to the bench in 2001, and he later was elected and reelected in the 2002 and 2006 general elections, respectively. However, in looking to the character of his service, Judge Osborne’s tenure in the judiciary has been marked by prior disciplinary proceedings before the Commission and sanctions by this Court. In Mississippi Commission on Judicial Performance v. Osborne, 876 So.2d 324 (Miss.2004) (Osborne I), Judge Osborne was publicly reprimanded for practicing law as a judge in violation of Mississippi Code Sections 9-1-25 and 9-9-9 (Rev.2002). In Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314, 326 (Miss.2008) (Osborne II), Judge Osborne was suspended for 180 days and assigned the costs of that proceeding for failing to observe high standards of conduct and invoking his office in objecting to the repossession of the automobile jointly owned by his wife and mother-in-law. Today’s case is Osborne III.

B. Whether there is any case law on point.

¶ 33. Having already discussed factual similarities between this case and Mississippi Commission on Judicial Performance v. Boland, 975 So.2d 882 (Miss.2008) *117 (Boland I), we will not belabor the point. In Mississippi Commission on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000), the Commission had recommended removal from office prior to Judge Byers losing her bid for reelection. Because she was no longer in office, this Court imposed a sanction less severe than removal from office. Id. at 973.

C. The magnitude of the offense.

¶ 34. Undermining the public confidence in the integrity, propriety, and impartiality of the office is an egregious offense. Judge Osborne’s comments received widespread publicity in the media to the extent that forty-eight citizens complained to the Commission.

D. Whether the misconduct is an isolated incident or evidences a pattern of conduct.

¶ 35. As discussed previously, Judge Osborne has a long history of violating the judicial canons and being sanctioned by this Court. It would stand to reason that a third offense warrants a harsh sanction.

E. Whether moral turpitude was involved.

¶ 36. The Commission argues that Judge Osborne’s comments failed to uphold the “dignity and respect of the judiciary” pursuant to this Court’s holding in Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006). The Commission’s argument on this point is based on its assertion of perjury committed by Judge Osborne. Inasmuch as we have resolved the perjury issue in favor of Judge Osborne, we find that moral turpitude was not involved.

F. The presence or absence of mitigating or aggravating circumstances.

¶ 37. Judge Osborne urges this Court to consider his community and public service and his plans for improvement to the juvenile justice system in Leflore County. However, the Commission points to Judge Osborne’s prior disciplinary history as an aggravating factor. See Miss. Comm'n on Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005). This Court agrees with the Commission that two prior offenses outweigh the character of Judge Osborne’s service to his community.
¶ 38. Based on Judge Osborne’s actions in today’s case and his history of judicial misconduct already discussed, the harshest constitutional remedy-removal from office-would be appropriate. We acknowledge that since the institution of these proceedings before the Commission, Judge Osborne has resigned his judicial position, effective May 30, 2008. Thus, one obvious issue to consider is the propriety of removing from office, or suspending from office, a judge who is no longer holding judicial office at the time of this Court’s decision in a judicial misconduct case. In other words, what is the point?
¶ 39. We acknowledge that in at least two eases, after finding egregious conduct on the part of the subject judges, we chose the sanction of public reprimand as the judges, by the time of our decisions, had been removed from judicial office via the citizens at the ballot box. Miss. Comm’n on Judicial Performance v. Boland, 998 So.2d 380, 393 (Miss.2008) (.Boland II); Miss. Comm’n on Judicial Performance v. Byers, 757 So.2d 961, 973 (Miss.2000).
¶ 40. On the other hand, in Mississippi Commission on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996), this Court found that the judge “should be removed from the bench.” Id. at 201. This finding was made notwithstanding the fact that the subject judge had chosen not to seek reelection to judicial office and thus was no longer in office at the time of *118 this Court’s decision to remove him from office. Id. at 182 n. 1. Of significant import in today’s case is the following language found in Dodds, in which Justice Banks, writing for the majority, stated:
Floyd Dodds was not a candidate for reelection in the 1995 elections and, therefore, left office in January 1996. It follows that this case is moot insofar as it requires that he leave office. We conclude, however, that there are substantial reasons for bringing this matter to a conclusion with a decision on the merits. First, one should not be able to preclude discipline by the simple expedient of resigning or otherwise voluntarily leaving office. See In re the Matter of Weeks, 134 Ariz. 521, 658 P.2d 174 (1983). Additionally, judicial conduct is a matter of great public interest and our decisions serve as a guide for the entire judiciary and to preserve the public confidence in it. In re Yaccarino, 101 N.J. 342, 502 A.2d 3, 30-31 (1985); Matter of Probert, 411 Mich. 210, 308 N.W.2d 773, 776 (1981); Judicial Inquiry and Review Bd. v. Snyder, 514 Pa. 142, 523 A.2d 294, 298 (1987).
Dodds, 680 So.2d at 182 n1. See also Miss. Comm’n on Judicial Performance v. Brown, 918 So.2d 1247, 1256, 1259 (Miss.2005) (judge removed from office although he “claim[ed] he [would] not seek another term.”).
¶ 41. As we stated in Osborne II, “[a] second offense undoubtedly warrants a harsher penalty.” Osborne, 977 So.2d at 326. In Osborne II, we found that Judge Osborne’s judicial misconduct warranted, inter alia, a suspension from office for a period of 180 days. Id. at 327. It thus logically follows that a third offense of judicial misconduct on the part of Judge Osborne would warrant a harsher penalty than the 180-day suspension which Judge Osborne received for his second offense. Therefore, we find that in today’s case, Osborne III, the appropriate sanction is suspension from office for a period of one year and the assessment of costs. Again, we find this sanction to be in keeping with the logic expressed in Dodds for the imposition of a sanction of removal (or in this case, suspension), even though the judge chose to resign from judicial office prior to this Court’s decision. Dodds, 680 So.2d at 182 n1.
¶ 42. In Boland II, this Court found that because the voters had removed the judge from office by the time we decided her case, the constitutional sanction of removal from office was no longer available. Boland II, 998 So.2d at 393. More specifically, we stated that “[s]ince the public removed [the judge] from office before this Court could act on the Commission’s recommendation, the remaining options [under the Constitution] are only to fine or publicly censure or reprimand her.” Id. However, this statement in Boland II is inconsistent with Dodds. Therefore, to this limited extent, Boland II is overruled.
CONCLUSION
¶ 43. Judge Osborne’s actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus order Judge Osborne to be suspended from office for a period of one year and to be assessed costs in the sum of $731.89.
¶ 44. FORMER COUNTY COURT JUDGE SOLOMON C. OSBORNE SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF ONE YEAR FROM AND AFTER THE ISSUANCE OF THE MANDATE IN THIS CASE AND IS ASSESSED COSTS OF $731.89.
WALLER, C.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, *119 JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, P.J., AND DICKINSON, J. DICKINSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND KITCHENS, J.

. According to the Commission, the statement was made in reference to the appointment of two local African-Americans to the Greenwood Election Commission by a Caucasian mayor.

. By the time of the subsequent committee hearing, Osborne was represented by counsel.

. See Kron v. Van Cleave, 339 So.2d 559, 563 (Miss.1976) ("courts will not decide a constitutional question unless it is necessary to do so in order to decide the case”); see also Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) (If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.).

. In its formal complaint, the Commission charged Judge Osborne with violating section A(3)(a), not section A(1)(a) of Canon 5.

. The Greenwood Voters League is a predominantly African-American political organization which regularly endorses candidates sympathetic to the black community. Jordan v. Greenwood, 534 F.Supp. 1351, 1354 (N.D.Miss.1982). It is general knowledge that the League holds weekly meetings in the City of Greenwood, either at public places or private facilities open to the public, to discuss civic issues. During election cycles, many candidates running for political office, as well as judicial office, are invited by the League to speak. There is no evidence in the record demonstrating that the League practices invidious discrimination on the basis of race, gender, religion, or national origin. See Canon 2C.

. We do not dispute the fact that, from the record, the Commission could have charged Osborne with perjury via a formal complaint. and proceeded to an evidentiary hearing on dris issue; however, the Commission did not do so.

. In Gibson, we modified the Baker factors. Gibson, 883 So.2d at 1158 (citing Inquiry Concerning Dennis M. Baker, Chancellor, 535 So.2d 47, 54 (Miss. 1988)).