972 So.2d 582 (2008)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Rickey W. THOMPSON.
No. 2007-JP-01484-SCT.
Supreme Court of Mississippi.
January 17, 2008.
*583 Darlene D. Ballard, Ayanna Batiste, attorneys for appellant.
William C. Murphree, Tupelo, attorney for appellee.
EN BANC.
CARLSON, Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint charging Lee County Fourth District Justice Court Judge Rickey W. Thompson with willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, thus causing *584 such alleged conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890. In due course, the Commission and Judge Thompson submitted to us a joint motion for approval of a recommendation that Judge Thompson be publicly reprimanded and assessed with costs. Having conducted our mandated review of the Commission's recommendation consistent with Article 6, Section 177A, Mississippi Commission on Judicial Performance Rule 10, Mississippi Rules of Appellate Procedure 16(d), and upon consideration of our judicial canons and our case law, we adopt the joint recommendation that Judge Thompson be publicly reprimanded and assessed with costs in the amount of $100.

FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶ 2. After the Commission's filing of the formal complaint against Judge Thompson and the filing of Judge Thompson's answer to the formal complaint, the Commission entered its scheduling order; however, in due course, without the necessity of a hearing, the Commission's counsel and Judge Thompson, along with his counsel, filed with the Commission an Agreed Statement of Facts and Proposed Recommendation, which was accepted by the full Commission.
¶ 3. A reading of the Agreed Statement of Facts and Proposed Recommendation reveals certain agreed facts as follows: On May 22, 2006, a physical altercation occurred between two siblings, Deborah Ann Moody and Sally Thompson Gill, while they were attending their grandmother's funeral at Union Baptist Church in Shannon. That evening, Moody appeared at the Lee County Sheriff's Department to file charges against Gill. An officer at the Sheriff's Department took a statement from Moody and then informed her that she should go to the Justice Court Building the next day to file the necessary papers to have a warrant issued for her sister's arrest. On May 23, 2006, Moody went to the Justice Court Clerk's office, as previously directed, and while there she happened to see Judge Thompson, who informed her that she should take her grievance to another judge, whereupon Moody appeared before Lee County Justice Court Judge John H. Sheffield. We now quote from this agreed statement of facts:
While Moody and Judge Sheffield were in the process of discussing the issuance of a warrant, [Judge Thompson] entered Judge Sheffield's office. [Judge Thompson] expressed a desire to talk to Judge Sheffield about the situation before he signed the warrant. Judge Sheffield expressed that he would be issuing the warrant. [Judge Thompson] became angry and left Judge Sheffield's office. Thereafter, Judge Sheffield authorized the warrant and explained to Moody that it would be issued on a Recognizance Appearance Bond and advised Moody to take the warrant to the Justice Court Clerk's office.
As Moody entered the hallway she saw [Judge Thompson] standing outside of his office. [Judge Thompson] then asked Ms. Shea Willis, Lee County Justice Court Deputy Clerk, not to send the warrant. Ms. Willis agreed. Moody then asked Ms. Willis if the warrant would be sent to the Lee County Sheriff Department, and Ms. Willis responded no.
Moody then walked back to Judge Sheffield's office to tell him what happened. Judge Sheffield gave Moody the telephone number for the Mississippi Commission on Judicial Performance. Afterwards, Moody went back to the Justice Court Clerk's office. A different deputy *585 clerk advised Moody that she would send the warrant in that day. Moody obtained a copy of the warrant and departed.
¶ 4. A constable received the warrant and telephoned Gill concerning the outstanding arrest warrant. Gill then voluntarily surrendered herself at the Lee County Justice Court Office, whereupon she was processed and released on her own recognizance. In due course, a justice court date was assigned for Gill based on the charges brought by Moody. In the Agreed Statement of Facts and Proposed Recommendation, Judge Thompson acknowledged that he improperly allowed "his family, social or other relationships to influence his judicial conduct and that he, as well as his staff, must be courteous, cooperative with other judges, and observe standards of fidelity and diligence when performing [his] official duties." Judge Thompson also acknowledged that failure to follow these judicial tenets constitutes misconduct. Additionally, Judge Thompson acknowledged that his judicial misconduct caused him to be in violation of Canons 1, 2B and 3B(2) of the Mississippi Code of Judicial Conduct. Thus Judge Thompson's conduct is actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution inasmuch as Judge Thompson's conduct unquestionably constitutes willful misconduct in office and conduct prejudicial to the administration of justice, bringing the judicial office into disrepute.
¶ 5. The Commission entered its Findings of Fact and Recommendation, adopting the Agreed Statement of Facts and Proposed Recommendation. The Minutes Excerpt filed by the Commission reveals that on motion duly made and seconded, the Commission unanimously recommended to this Court that Judge Thompson be publicly reprimanded and assessed with costs in the amount of $100.00.

DISCUSSION
¶ 6. Consistent with our practice in judicial misconduct cases, we first consider the judge's conduct, and if found to be actionable, we then consider the appropriate sanction.
I. WHETHER JUDGE THOMPSON'S CONDUCT CONSTITUTED WILLFUL MISCONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
¶ 7. Our cases are legion on the point that this Court conducts a de novo review of judicial misconduct proceedings, while affording deference to the Commission's recommendations when the Commission's findings are based on clear and convincing evidence. Comm'n on Judicial Performance v. Cole, 932 So.2d 9, 10 (Miss. 2006) (citing Miss. Comm'n on Judicial Performance v. Hartzog, 904 So.2d 981, 984 (Miss.2004)). See also Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1156 (Miss.2004). "While we do give great deference to the Commission's findings, we are also charged to render an independent judgment." Id. (citing Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994)). In essence, this Court serves as the "the trier of fact" since we "have the sole power to impose sanctions in judicial misconduct cases." Id. at 1156-57 (citing Peyton, 645 So.2d at 956).
¶ 8. With our appropriate standard of review and mandated duty in mind, we return to today's case. The Commission charges Judge Thompson with violating Canons 1, 2B and 3B(2) of our Code of Judicial Conduct. We set out here the *586 judicial canons which Judge Thompson admits he violated:
CANON 1
A Judge Shall Uphold the Integrity and Independence of the Judiciary[.]
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities[.]
. . . .
B. Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently[.]
. . . .
B. Adjudicative Responsibilities.
. . . .
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
¶ 9. We note that while Judge Thompson readily admits the violation of these judicial canons, the facts of this case likewise support a finding by us that Judge Thompson violated these canons, and is thus guilty of willful misconduct while in office.
¶ 10. This Court has for many years been consistent in its definition of willful judicial misconduct. We recently stated once again:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. . . .
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Miss. Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 346-47 (Miss.2006) (citing Miss. Comm'n on Judicial Performance v. Whitten, 687 So.2d 744, 747 (Miss.1997)). See also In re Quick, 553 So.2d 522, 524 (Miss.1989). In Cowart, we further stated:

*587 While the conduct of [the judge], in our opinion, amounted to willful misconduct in office and conduct prejudicial to the administration of justice, bringing the judicial office into disrepute, we recognize as quoted in In re Anderson, supra,[1] that a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
936 So.2d at 347 (quoting In Re Anderson, 451 So.2d 232, 234 (Miss.1984)).
¶ 11. In today's case, Judge Thompson, in the presence of the affiant, Moody, unquestionably interjected himself into a case (from which he had already in essence "recused" himself) by informing Judge Sheffield that he (Judge Thompson) wanted to talk to Judge Sheffield before he (Judge Sheffield) signed the arrest warrant on Moody's sister, Gill. When Judge Sheffield refused, Judge Thompson angrily left Judge Sheffield's office. After Judge Sheffield executed the arrest warrant for Gill, Moody left Judge Sheffield's office to "walk" the warrant down to the Justice Court Clerk's office to be processed, whereupon Judge Thompson told one of the justice court deputy clerks not to issue the warrant, and she complied with Judge Thompson's request. A different justice court deputy clerk later issued the duly executed arrest warrant, and Gill was arrested and released on her own recognizance. From these admitted facts, we find that Judge Thompson indeed violated Canons 1, 2B and 3B(2) of the Code of Judicial Conduct, and that these actions constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute; therefore, Judge Thompson's judicial misconduct is actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution. We thus move to the second issue.
II. WHETHER PUBLIC REPRIMAND AND ASSESSMENT OF COSTS ARE APPROPRIATE SANCTIONS.
¶ 12. According to Article 6, Section 177A, upon a finding similar to the one we have made today (willful judicial misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute), this Court "may remove from office, suspend, fine or publicly censure or reprimand" the guilty judge. In today's case, there is before us for consideration, inter alia, the Memorandum Brief in Support of Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance, filed by both counsel for the Commission and counsel for Judge Thompson. As duly noted by the Commission and Judge Thompson, this Court considers several factors in determining the appropriate sanction in any case involving judicial misconduct. In Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), we modified the Baker factors. In re Baker, 535 So.2d 47, 53-54 (Miss.1988).
¶ 13. The six Gibson factors we now consider to impose sanctions in judicial misconduct cases are: "(1) The length and character of the judge's public service; (2) Whether there is any prior case law on *588 point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances." Gibson, 883 So.2d at 1158. In a footnote, we stated that "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Id. n. 2.
(1) The length and character of the judge's public service.
¶ 14. Judge Thompson was first elected as a justice court judge in Lee County in 2003, and in August, 2007, he was reelected to another four-year term.
(2) Whether there is any prior case law on point.
¶ 15. There is considerable judicial precedent relevant to the issues presented, as cited both supra and infra.
(3) The magnitude of the offense and the harm suffered.
¶ 16. Although the record is unclear, Judge Thompson obviously knew Deborah Ann Moody, and upon seeing Moody at the Justice Court Clerk's office, Judge Thompson, for whatever reason, immediately decided not to get involved in the case, choosing instead to request that Moody take her case to another judge. Notwithstanding this decision not to be involved in the case, Judge Thompson, in Moody's presence, insisted that Judge Sheffield talk with him before signing the arrest warrant on Sally Thompson Gill.[2] When Judge Sheffield refused, Judge Thompson became angry, left Judge Sheffield's office and instructed a justice court deputy clerk not to issue the arrest warrant. We do not know how many persons may have witnessed Judge Thompson's conduct in Judge Sheffield's office or later in the hallway of the Justice Court Building, nor do we know how many persons may have since learned of Judge Thompson's conduct, but we can safely state, as asserted by the Commission, and admitted by Judge Thompson, that Judge Thompson's conduct created "the appearance that he may be partial to certain interests. The litigants that appear in Justice Court or that come to Justice Court for assistance deserve a fair and independent judiciary and in this case, the litigant did not receive that and, therefore, suffered harm. The public's perception of the judiciary as a whole was impugned."
(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 17. Judge Thompson has one prior disciplinary action against him. As asserted by the Commission, and admitted by him, Judge Thompson signed an Agreed Statement of Facts and Proposed Recommendation in September 2005, and received a private admonishment for participating in ex parte communications with parties concerning a pending matter. The 2005 case and today's case are unrelated.
(5) Whether moral turpitude was involved.
¶ 18. This Court has found the existence of moral turpitude in recent cases. *589 Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 305-306 (Miss. 2007) (fourteen instances of "ticket-fixing"); Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 216-18 (Miss. 2006) (at request of judge, sheriff informed arresting officer in DUI case not to appear at a court hearing so that judge could dismiss case for failure to prosecute, and the case was dismissed); Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006) (six complaints ranging from ex parte communications with parties to setting aside judgment entered by another judge); Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006) (three instances involving ex parte communications, resulting in judge remanding traffic tickets to files).
¶ 19. Contrary to the egregious actions of the judges in Gordon, Sanford, Britton and Cowart, we agree with the Commission in today's case that Judge Thompson's actions, while highly improper, do not rise to the level of moral turpitude. While Judge Thompson's actions in urging Judge Sheffield to talk with him about the arrest warrant were clearly inappropriate, we have in the record only the statement of fact that Judge Thompson "expressed a desire to talk with Judge Sheffield about the situation before he signed the warrant." (Emphasis added). Judge Thompson evidently did not attempt to persuade Judge Sheffield not to sign the arrest warrant. In any event, Judge Sheffield, notwithstanding Judge Thompson's actions, forthwith signed the arrest warrant on Gill and gave the executed warrant to Moody to deliver to the justice court clerk's office for processing. Likewise, although there was an obvious momentary delay in issuing the arrest warrant due to Judge Thompson's instructing a justice court deputy clerk not to issue the warrant, another justice court deputy clerk issued the warrant soon thereafter, and Gill subsequently was taken into custody on the same day that the arrest warrant was executed by Judge Sheffield. We thus conclude that the totality of Judge Thompson's actions does not reveal the existence of moral turpitude.
(6) The presence or absence of mitigating or aggravating circumstances.
¶ 20. There is no doubt as to the existence of aggravating circumstances in that Judge Thompson previously has been disciplined via private admonishment for engaging in ex parte communications with parties concerning a pending matter. Likewise, Judge Thompson's conduct, as asserted by the Commission, and admitted by Judge Thompson, reflects "adversely on the propriety and impartiality of the judiciary." The citizens of Lee County unquestionably have a right to expect and demand that their elected justice court judges will refrain from such judicial misconduct. On the other hand, this Court also unhesitatingly acknowledges that Judge Thompson stepped up and accepted responsibility for his conduct and is willing to be held accountable for his actions. Such action on the part of Judge Thompson is commendable and is considered by this Court to be mitigating in nature. We may thus consider this expression of contrition, along with the totality of the record and the application of the Gibson factors consistent with our case law, in determining the appropriate sanction to impose upon Judge Thompson.
¶ 21. The Commission and Judge Thompson suggest to us that the recommendation of a public reprimand is consistent with similar cases such as Commission on Judicial Performance v. Cole, 932 So.2d 9 (Miss.2006); and Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182 (Miss.2000). We *590 agree. In Cole, the judge reinstated his grandson's driver's license, which had been revoked pending disposition of various traffic charges, including a DUI charge. The judge's grandson later entered a nolo contendere plea to all traffic charges before a justice court judge specially appointed to hear the case. Since the judge's grandson was on probation for a felony offense, the previously imposed probation was revoked, and Judge Cole approached the sheriff in an effort to have his grandson serve his sentence in the county jail, as opposed to a state facility. In deciding that the judge should be publicly reprimanded, we stated:
We find sanctions like the ones suggested by the Commission to be appropriate in cases with factually similar circumstances. In Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182 (Miss.2000), we held a public reprimand and a fine of $500 plus court costs were appropriate sanctions for a Winston County Justice Court judge's ex parte contacts with an arresting officer, an officer supervisor, and another judge concerning the DUI case of the justice court judge's son.
Cole, 932 So.2d at 11.
¶ 22. In sum, having considered the record before us and having applied the Gibson factors consistent with our case law, we agree that the joint recommendation by the Commission and Judge Thompson should be adopted in toto.

CONCLUSION
¶ 23. Judge Thompson's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus order Judge Thompson to be publicly reprimanded and assessed costs in the amount of $100. This reprimand shall be read in open court on the first day of the next term of the Circuit Court of Lee County in which a jury venire is present, with Judge Thompson present and standing before the presiding judge, who shall read the reprimand in open court.
¶ 24. LEE COUNTY JUSTICE COURT JUDGE RICKEY W. THOMPSON SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE LEE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THIS DECISION BECOMES FINAL; AND IS ASSESSED COSTS IN THE AMOUNT OF $100.00.
SMITH, C.J., WALLER, P.J., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., NOT PARTICIPATING.
NOTES
[1] This case is different from the 1984 case, and is cited as In Re Lloyd W. Anderson, 412 So.2d 743, 745 (Miss.1982).
[2] Though of no moment in today's case, the record is curiously silent as to whether Judge Thompson, Moody and Gill are related by blood or marriage, notwithstanding the citation to Canon 2B as being one of the judicial canons violated by Judge Thompson. Canon 2B states in pertinent part: "Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment."