16 So.3d 16 (2009)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Solomon C. OSBORNE.
No. 2008-JP-01222-SCT.
Supreme Court of Mississippi.
June 18, 2009.
Rehearing Denied September 10, 2009.
*17 Luther T. Brantley, III, Darlene D. Ballard, attorneys for appellant.
Soloman Osborne, pro se, Leonard McClellan, Jackson, attorneys for appellee.
EN BANC.
PIERCE, Justice, for the Court.
¶ 1. On February 12, 2007, the Mississippi Commission on Judicial Performance (Commission) filed a formal complaint against Solomon C. Osborne, County Court Judge, LeFlore County, Mississippi, alleging judicial misconduct which was actionable pursuant to Article 6, Section 177A, Mississippi Constitution of 1890, as amended. The Commission filed the action in part due to a citizen's complaint by V.K.[1] Judge Osborne filed an answer to the formal complaint, denying the claims, with a motion to dismiss and affirmative defenses. The Commission had a hearing on the allegations on November 7, 2007. Thereafter, the Commission filed its Findings of Fact, Analysis and Recommendations on December 14, 2007. Judge Osborne objected to these findings. The Commission filed a second set of findings of fact, and Judge Osborne objected to these findings as well.
¶ 2. On July 16, 2008, the Commission filed its Commission Findings of Fact and Recommendation with this Court. The Commission found by clear and convincing evidence that Judge Osborne had violated Canons 1, 2(A), and 3(E) of the Code of Judicial Conduct. The Commission also determined that Judge Osborne had violated Article 6, Section 177A, Mississippi Constitution of 1890, as amended, by conducting himself in a way that constituted willful misconduct in office and by conduct prejudicial to the administration of justice, bringing his judicial office into disrepute. The Commission also found that Judge Osborne's assertion that the inquiry was a result of racial bias was not supported by any evidence to substantiate the claim, and therefore, the Commission denied his motion to dismiss.
¶ 3. The Commission recommended that Judge Osborne be removed from office restrained from seeking a judicial office in the State of Mississippi in the future and assessed all costs of the proceedings in the sum of $1,389.69. This Court adopts the Commission's findings that Judge Osborne violated Canons 1, 2(A), and 3(E). Further, this Court removes Judge Osborne *18 from office and orders that he pay the assessed costs of this proceeding in the amount of $1,389.69. This Court also upholds the Commission's decision to deny his motion to dismiss.

FACTS
¶ 4. On May 5, 2006, L.K., a minor, was detained for allegedly pointing at gun at K.W., another minor, and stating that she would "blow her head off." V.K., L.K.'s mother, was out of town at the time of the alleged incident. V.K. returned to Greenwood on May 7. She hired an attorney, Levi Boone. Later that day, Judge Osborne released L.K. from the juvenile detention center into her mother's custody. The next day V.K. met with A. Lee Abraham, Jr., and hired him to represent L.K.
¶ 5. A detention hearing was scheduled for May 9, 2006. Abraham informed the court that he had been retained as L.K.'s attorney, however, he would not be able to attend the hearing. V.K. and L.K. attended the detention hearing. After asking a few preliminary questions at the hearing, Judge Osborne stated, "This is supposed to be a detention hearing, I understand you have retained Lee Abraham as your attorney and I don't hear his cases. What we are going to do is continue this detention hearing until another judge can be appointed." Judge Osborne signed an order which stated, in part:
11. After reviewing this matter, the Court has determined that the fact [sic] of the case shows that the child is a danger to herself or others within the meaning of Mississippi Code Section 43-21-301.
12. At the Detention Hearing, the mother of the child advised the Court that she would or has retained Attorney Lee Abraham to represent her. Mr. Abraham has not filed an entry of appearance in this matter, but has informed the Court Administrator that he represents the minor herein.
13. Based upon the announcement that the minor is represented by Attorney Lee Abraham, this Court will recusal [sic] itself from any further proceedings in this case and this matter will be handled by the Special Youth Court Judge, Honorable James Littleton, III.
14. Based upon the Complaint filed in this matter, this Court has determined that a Custody Order should be issued pursuant to Miss.Code Section 43-21-301, and the minor will be placed back in custody pending a Detention Hearing.
¶ 6. On May 10, 2006, L.K. had a detention hearing before Special Judge Littleton. He ordered L.K. to be placed in custody.
¶ 7. Thereafter, Abraham filed a Writ of Prohibition with this Court. A panel of this Court granted the writ on May 26, 2006, finding that, after Judge Osborne recused himself, he lacked authority to take any further action in the case. This Court vacated all actions, rulings, and orders entered by Judge Osborne following his recusal. More specifically, this Court found that Judge Osborne was without authority to appoint James K. Littleton as a special judge in the matter and vacated all actions, rulings, and orders entered by Special Judge Littleton. This Court appointed a special judge to hear the matter and ordered L.K.'s release to her mother.

DISCUSSION
¶ 8. In a judicial misconduct proceeding, this Court conducts a de novo review. Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008). This Court also affords "deference *19 to the Commission's recommendations when the Commission's findings are based on clear and convincing evidence." Id. Notwithstanding this deference, this Court is the sole authority for the imposition of sanctions in cases involving judicial misconduct and, therefore, we are obligated to conduct an independent inquiry in each case. Miss. Comm'n on Judicial Performance v. Carr, 990 So.2d 763, 766 (Miss.2008). This Court is not bound by the Commission's findings, and we may impose additional sanctions. Miss. Comm'n on Judicial Performance v. Boland, 975 So.2d 882, 888 (Miss.2008) (Boland I).

I. WHETHER JUDGE OSBORNE'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION.
¶ 9. In judicial misconduct proceedings, this Court is tasked with the duty to determine whether the conduct of the judge in question constitutes willful misconduct prejudicial to the administration of justice, which brings the judicial office into disrepute under Section 177A of the Mississippi Constitution of 1890, as amended. This Court has defined willful misconduct as follows:
"Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith. . . . A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. . . . Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute."
Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 212-213 (Miss. 2006) (quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004)). This Court has stated that "[w]hether this behavior was actually willful is of no consequence." Boland I, 975 So.2d at 893 (citing Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000)). This Court has held:
While the conduct of Respondent, in our opinion, amounted to willful misconduct in office and conduct prejudicial to the administration of justice, bringing the judicial office into disrepute, we recognize as quoted in In re Anderson, supra, that a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
Boykin, 763 So.2d at 875 (quoting In re Anderson, 451 So.2d 232, 234 (Miss.1984)).
¶ 10. The Commission determined, based on clear and convincing evidence, that Judge Osborne had violated Canons 1, 2(A), and 3(E) of the Code of Judicial Conduct.[2] The Commission further found *20 that Judge Osborne's conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice, bringing his judicial office into disrepute. The Commission's decision was based on the actions Judge Osborne took after he recused himself from the case. The transcript from the detention hearing showed that Judge Osborne recused himself from hearing L.K.'s case based on the counsel that V.K. had retained on her daughter's behalf. The transcript also reveals that, once Judge Osborne recused himself from the case, he again detained L.K. in the Juvenile Detention Center until she had a new hearing. Following the hearing, Judge Osborne, in an order, recused himself, then appointed a special judge to hear L.K.'s case, and redetained L.K. in the Juvenile Detention Center until she had a new hearing. This Court granted, in part, a petition for writ of prohibition and supplement to petition for writ of prohibition and additional plea for writ of habeas corpus filed by counsel for L.K., finding that all actions, rulings, and orders entered by Judge Osborne following his recusal were vacated, including the appointment and all actions of the special judge. The canons which the Commission determined Judge Osborne violated are as follows:
¶ 11. Canon 1 provides:
A Judge Shall Uphold the Integrity and Independence of the Judiciary.
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
¶ 12. Canon 2(A) provides:
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities.
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality if the judiciary.
¶ 13. Canon 3(E) provides:
Disqualification.
(1) Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or member of the judge's family residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially *21 affected by the outcome of the proceeding;
(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) is to the judge's knowledge likely to be a material witness in the proceeding
¶ 14. The Commission found that Judge Osborne had violated Canon 1 and 2(A) by failing to observe high standards of conduct when he committed the minor child to detention after recusing himself from the case and then entering an order appointing James K. Littleton to hear the case without authority. The Commission also determined that Judge Osborne had violated Canon 3(E) by recusing himself from the case because L.K. was represented by Abraham, appointing Littleton as special judge without authority, and redetaining the minor child without a detention hearing.
¶ 15. Judge Osborne disputes the findings of the Commission that he violated Canons 1, 2(A), and 3(E). Judge Osborne argues that he is not guilty of judicial misconduct for the actions he took to protect individuals from potential harm.
¶ 16. First, Judge Osborne contends that the Commission's findings are erroneous because its findings are not supported by the facts or the law. In addition, Judge Osborne claims that the Commission ignored material facts. To that end, Judge Osborne cites numerous facts on which he contends the Commission erroneously relied to reach its decision. Despite his recusal, Judge Osborne also argues that he still had a duty under the Youth Court Act to protect K.W. and others from harm potentially posed by another juvenile. He argues that there was probable cause to redetain L.K., pending a detention hearing, and therefore, he should not be sanctioned for attempting to protect individuals from threats.
¶ 17. Second, as to appointing Littleton as a special judge in this matter, Judge Osborne argues that he simply committed an error of law. This error, he contends, should not subject him to disciplinary action.
¶ 18. We agree with the Commission's findings that Judge Osborne's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

II. WHETHER JUDGE OSBORNE SHOULD BE REMOVED FROM OFFICE AND ASSESSED THE COSTS OF THIS PROCEEDING AS RECOMMENDED BY THE COMMISSION.
¶ 19. In Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), this Court modified In Re Baker, 535 So.2d 47 (Miss. 1988). In Gibson, this Court held:
[W]e modify Baker to apply generally to the determination of all sanctions in judicial misconduct proceedings (rather than merely applying to the question of public reprimand) and examine the appropriateness of such sanctions based on the following factors: (1) The length and character of the judge's public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether *22 the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.
Gibson, 883 So.2d at 1158 (footnote omitted). We now examine the appropriateness of sanctions based on the six factors.

(1) The length and character of the judge's public service.
¶ 20. Judge Osborne had served as the County Court Judge of Leflore County since 2001. During that time, Judge Osborne was elected twice to the position. Judge Osborne has a long history of public service, including work as an attorney with North Mississippi Legal Services. One of Judge Osborne's character references stated that Judge Osborne has worked to establish a juvenile drug court, was instrumental in creating a juvenile drug-and-alcohol counselor position and a juvenile crime-enforcement coalition, and has worked with the Annie E. Casey Foundation to help reduce juvenile crime.

(2) Whether there is any prior case law on point.
¶ 21. The Mississippi Constitution provides:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const. art. 6, § 177A (1890) (emphasis added). In Mississippi Commission on Judicial Performance v. Dodds, 680 So.2d 180, 190-191 (Miss.1996), this Court held that a judge's behavior can be prejudicial to the administration of justice so as to bring the judicial office into disrepute whether the conduct is willful misconduct or whether the conduct is negligence or ignorance, not amounting to bad faith. As in Dodds, Judge Osborne argues that he made a mistake of law and should not be subject to disciplinary measures. Id. However, this Court in Dodds stated:
Furthermore, Dodds' defense of ignorance and lack of understanding of the law during his early years as a justice court judge is of no avail to him, as this Court has held that a judge may behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute through negligence or ignorance not amounting to bad faith.
Dodds, 680 So.2d at 199. In Mississippi Commission on Judicial Performance v. Boland, 998 So.2d 380, 385 (Miss.2008) (Boland II), this Court stated:
While this Court has clarified that it will not accept ignorance or incompetence by judges as a reason for not following the law, it also has made clear that "[j]udges are human, and as such, do on occasion err. Ultimately, it is this Court's constitutional duty to separate honest errors of a judge from willful misconduct, wrongful use of power, corruption, dishonesty, or acts of moral turpitude which negatively reflect upon the judicial branch of government." Miss. Comm'n on Judicial Performance v. *23 Martin, 921 So.2d 1258, 1263 (Miss. 2005).
Boland II, 998 So.2d at 385. However, in Mississippi Commission on Judicial Performance v. Martin, 921 So.2d 1258, 1263 (Miss.2005), this Court determined that Judge Martin's actions did not constitute a violation of the Canons. Judge Martin overstepped her authority as a justice court judge by denying bail to a defendant. Id. at 1262. Judge Martin argued that she was confused by a number of statutes and a section of the Constitution concerning bail; that her training and seminars never had addressed the issue, and therefore, any mistake that occurred was an honest error. Id. at 1264. This Court dismissed the complaint against her and stated:
A simple mistake in the face of reasonable efforts to base decisions on controlling law is not sanctionable. To find otherwise could subject any judge to disciplinary action for honest errors. If one were to extend the Commission's logic to all cases, every judge, who honestly erred in determination of the appropriate law, would be subject to judicial performance review and possible sanctions. This result would most certainly disrupt the efficiency and independence of the judiciary, a consequence neither intended nor contemplated by the authors of the Constitution or the Canons of Judicial Conduct.
Id. at 1268. While this Court has determined that a mere error of law should not subject a judge to disciplinary action, we find that Judge Osborne's assertion that his actions were a mere error of law is without merit. The transcript of the detention hearing showed that Judge Osborne recused himself and then took further action in the case. It is fundamental that, once a recusal occurs, no judge may take further action in a case.
¶ 22. In addition, this Court has disciplined judges by removing them from office in the past. See Miss. Comm'n on Judicial Performance v. Lewis, 913 So.2d 266, 273 (Miss.2005); Miss. Comm'n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001); Miss. Comm'n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998); Miss. Comm'n on Judicial Performance v. Jenkins, 725 So.2d 162 (Miss.1998); Dodds, 680 So.2d at 201 (removed from office even though at the time of the sanction the judge no longer held the office); In re Anderson, 451 So.2d 232, 234 n. 2 (Miss.1984) (judge removed from office noting that "[e]ven though Justice Court Judge William Anderson may not now be in public office, this opinion and order effectively [disqualifies] him from offering for a judicial public office again, and the question is not moot"). In Mississippi Commission on Judicial Performance v. Lewis, 913 So.2d 266, 273 (Miss.2005), this Court referred to the duty placed upon the Supreme Court in judicial matters, including removal, and stated:
When the facts of the case and law dictate, this Court has a duty and responsibility to remove a judge. Miss. Comm'n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001); Miss. Comm'n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998); Miss. Comm'n on Judicial Performance v. Jenkins, 725 So.2d 162 (Miss.1998); Miss. Comm'n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996); Miss. Comm'n on Judicial Performance v. Milling, 651 So.2d 531 (Miss.1995). Finally, this Court has stated that "judges are called upon to exemplify the highest standards of conduct in a variety of situations and have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them." Willard, *24 788 So.2d at 746 (citing Spencer, 725 So.2d at 178).
Lewis, 913 So.2d at 273.
¶ 23. Most recently, this Court has sanctioned judges even though they no longer hold office. In Boland I, this Court publicly reprimanded and assessed costs to Judge Boland after she lost her bid for election. Boland I, 975 So.2d at 898. Likewise in Boland II, this Court again publicly reprimanded, fined, and assessed costs to Judge Boland after she no longer retained the position of justice court judge. Boland II, 998 So.2d at 385. See also Miss. Comm'n on Judicial Performance v. Former Judge U.U., 875 So.2d 1083, 1096 (Miss.2004) (private reprimand and costs); Mississippi Comm'n on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000) (public reprimand, fine, and costs).

(3) The magnitude of the offense and the harm suffered.
¶ 24. The Commission contends that the minor child suffered greatly as a result of Judge Osborne's conduct. The minor child was detained for approximately three weeks; she was unable to attend regular school classes; and her family had the expense of hiring an attorney. V.K. testified at the hearing that L.K. had moved from Mississippi to another state to finish high school as a result of the incident.

(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 25. Judge Osborne has a prior judicial disciplinary history. In Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008) (Osborne II), Judge Osborne was suspended for 180 days and assessed costs for his conduct involving the repossession of an automobile. In Mississippi Commission on Judicial Performance v. Osborne, 876 So.2d 324 (Miss.2004) (Osborne I), Judge Osborne was publically reprimanded and assessed costs for practicing law as a judge.

(5) Whether moral turpitude was involved.
¶ 26. In Boland II, this Court stated "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Boland II, 998 So.2d at 392 (quoting Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006)).
¶ 27. The Commission submits that Judge Osborne's conduct constituted an abuse of his position, since his behavior toward others was inappropriate. Further, the Commission cites Judge Osborne's prior disciplinary actions and continued violations of the Code of Judicial Conduct as evidence of moral turpitude. Judge Osborne argues that his actions were not a result of bad faith or malice, nor did he gain any personal benefit from them. In fact, Judge Osborne contends that his actions were a good-faith effort to get the minor child a timely detention hearing.
¶ 28. The record reveals that Judge Osborne recused himself at the hearing, then appointed a special judge and redetained the minor child. These actions were an abuse of discretion on Judge Osborne's part, however, his action fails to rise to the level of moral turpitude as defined by Sanford. See Boland II, 998 So.2d at 392; Sanford, 941 So.2d at 217.

(6) The presence or absence of mitigating or aggravating% circumstances.
¶ 29. The Commission contends that Judge Osborne shows no remorse for this *25 matter. While Judge Osborne does not specifically address each modified Baker factor under its own subheading, he generally argues that his conduct was a mere error of law. He also contends that his actions were performed in good faith, not bad faith, to ensure the minor child would receive a timely detention hearing.
¶ 30. After considering the modified Baker factors as set forth in Gibson, we agree with the Commission's findings that Judge Osborne violated Canons 1, 2(A), and 3(E). Gibson, 883 So.2d at 1158. Judge Osborne provided a persuasive argument in his defense. He argued that he had made a determination that probable cause existed to detain the minor based on an affidavit and other documents. The detention was, according to Osborne, an effort to protect another minor from a potential threat from L.K. Additionally, Judge Osborne argued that the appointment of the special judge was at best an error of law and should not warrant sanctions. However, Judge Osborne had recused himself from the case, but continued to take action in the matter. Judge Osborne also has a past history of judicial proceedings which resulted in numerous sanctions against him by this Court in Osborne I, and Osborne II. While Judge Osborne's conduct in this matter does not rise to the same level of severity as his past conduct, we cannot ignore the fact that Judge Osborne has had several prior sanctions imposed on him within a fairly short period of time, five years. Had this conduct been a single occurrence in Judge Osborne's judicial career, the outcome likely would have been different. Unfortunately, the fact remains that the Court now has had several judicial proceedings against Judge Osborne, and, therefore, we will impose sanctions accordingly.
¶ 31. We find that Judge Osborne shall be removed from office and assessed costs in the amount of $1,389.69, associated with this proceeding. Judge Osborne resigned from his office as county court judge on May 30, 2008. To the extent that Boland II may be interpreted to hold that this Court is limited in its available constitutional sanctions against a judge when the judge either resigns from office or is voted out of office by his or her constituents, and effectively removed, Boland II is overruled by this Court. Additionally, this Court denies Judge Osborne's motion to dismiss the complaint.

CONCLUSION
¶ 32. For the aforementioned reasons, this Court removes Solomon C. Osborne from office as Leflore County Court Judge, and directs that Osborne shall pay the costs of this proceeding in the amount of $1,389.69.
¶ 33. The Clerk of this Court is directed to mail a copy of this opinion to the LeFlore County Board of Supervisors and the Clerks of the LeFlore County Chancery, Circuit, and Justice Courts.
¶ 34. FORMER COUNTY COURT JUDGE SOLOMON C. OSBORNE, LEFLORE COUNTY, IS HEREBY REMOVED FROM OFFICE AND SHALL PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $1,389.69.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J.
KITCHENS, Justice, Dissenting:
¶ 35. Today's post-resignation removal of former County Court Judge Solomon C. Osborne perhaps marks the end of this Court's oft-repeated and, unfortunately, ineffectual *26 attempts to entreat him to conform his behavior to the high ethical standards to which our state's judicial officials are properly held. Judge Osborne's continuing presence on the dockets of the Commission on Judicial Performance and of this Court has been largely of his own making. But this case, standing alone and examined under the light of our ever-evolving precedent, does not merit the judgment leveled by the majority. Therefore, I respectfully dissent.
¶ 36. Article 6, Section 177-A, of the Mississippi Constitution empowers this Court, upon recommendation by the Commission, to subject to discipline any judge for, among other causes, "willful misconduct in office" or other "conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]" Miss. Const. art. 6 § 177-A(b), (e).
¶ 37. Willful misconduct, we have rightly held, "is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith." Miss. Comm'n on Judicial Performance v. Carr, 786 So.2d 1055, 1058 (Miss.2001). This is a high standard requiring evidence of "[a] specific[ ] intent to use the powers of the judicial office" for ill purposes. Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 212 (Miss.2006). But we also have held that "negligence, ignorance, and incompetence suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the judicial office into disrepute. . . ." Id. at 1059 (citing In re Quick, 553 So.2d 522, 527 (Miss. 1989)). "[A] judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute." Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000). Such a construction of Section 177-A is hard to fit into a system of jurisprudence in which appellate courts regularly adjudicate that other jurists have made erroneous legal judgments, which, in many cases, are found to amount to abuses of discretion, yet are not deemed judicial misconduct. Surely the Mississippi Constitution does not contemplate that we reserve the right to sanction any judge who renders a decision negligently but otherwise in good faith. A conclusion to the contrary implies that every reversal handed down by this Court should be accompanied by a finding of misconduct.
¶ 38. The Court implicitly recognized as much four years ago in Mississippi Commission on Judicial Performance v. Martin, 921 So.2d 1258 (Miss.2005). In that case, the Court identified several cases in which "mistake[s] of law w[ere] indeed made, but the mistake[s] w[ere] more than. . . mere error[s] in judgment; therefore, sanctions were appropriate." Id. at 1269. But in Martin, "no proof was presented that Judge Martin exhibited bad faith or gross unconcern in exercising her duties," and the Court concluded only that she "made an error in judgment. . . ." Id.
¶ 39. We are left, therefore, with conflicting interpretations: the rule outlined in Sanford and Boykin, which permits sanctions under Section 177-A(e) for decisions made "through negligence or ignorance not amounting to bad faith," Boykin, 763 So.2d at 875, and the far wiser reasoning of the Martin Court, which declined to render sanctions in a case absent proof of "bad faith or gross unconcern. . . ." Martin, 921 So.2d at 1269. Though I am mindful that the former interpretation dates back nearly 30 years in our jurisprudence, see In re Anderson, 412 So.2d 743 (Miss.1982), Martin provides, in my mind, the more just and more reasonable approach. *27 Martin conveyed to Mississippi judges the clear message that their mistakes of law, even if incorrect, will not subject them to professional discipline so long as their errors are not rendered in bad faith. To the extent that the well reasoned pronouncement of Martin abrogates the holding of Anderson, we should stand by that abrogation. Instead, today we seriously undermine the sound wisdom of Martin, and in so doing, we yank an important and readily understood rug from underneath the feet of this state's judiciary.
¶ 40. Next, we should recognize that the evidence presented to the Commission regarding this complaint was inadequate to prove the ulterior motive with which the Commission alleges that Judge Osborne acted. Judge Osborne presented evidence, uncontradicted by the Commission, that he learned only after originally releasing L.K. that the conflict culminating in the allegations of her gun brandishment was one of longstanding and escalating nature. This, according to Judge Osborne, persuaded him that L.K. should be held pursuant to Section 43-21-301(3)(b)(i) of the Mississippi Code.[3] This evidentiary void falls far short of the clear and convincing evidence we have said would be a prerequisite to our adoption of the Commission's recommendations for disciplinary action. See Maj. Op. at 8 (citing Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008)).
¶ 41. Therefore, as I would require a showing of a degree of culpability far greater than mere negligence, and, unpersuaded by the evidence as I am, I would not endorse the Commission's determination that Judge Osborne's conduct in this case was prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of Section 177-A(e). Likewise, because the charge of willful misconduct requires a showing of specific intent to pervert judicial authority, I also would reject the Commission's conclusion that Judge Osborne violated Section 177-A(b). We may conclude some years after the dust of these facts has settled, that Judge Osborne's decision to act in this case, while at the same time recusing himself, was an erroneous one. Certainly, a detention hearing was required to determine whether L.K. should be retained. See Miss.Code Ann. § 43-21-309 (Rev.2004). But absent as the record is of proof that Judge Osborne committed this error with "bad faith or gross unconcern," Martin, 921 So.2d at 1269, this Court is constitutionally powerless to sanction him for what has not been sufficiently proven to have been more than a mistake of law. The Commission's heavy implication is that Judge Osborne meted out this unfavorable and ultimately erroneous ruling only upon learning that Lawyer Lee Abraham, who at the time represented a party suing Judge Osborne, had been retained to represent L.K. But aside from this revelation and the fact that Judge Osborne's ruling conflicted with governing law, no evidence has been presented that suggests that Abraham's impending involvement led the judge, directly or indirectly, to reach his decision. Truly, the Commission has woven together nothing *28 more than a theory, which it has failed to prove by clear and convincing evidence.
¶ 42. Likewise, the Commission has not shown that Judge Osborne violated Canon 1 of the Code of Judicial Conduct when he failed to hold a detention hearing and when, without authority to do so, he attempted to appoint Lawyer James K. Littleton to hear L.K.'s case in his stead. Canon 1 commands this state's judges to "establish [], maintain [], and enforc[e] high standards of conduct . . . so that the integrity and independence of the judiciary will be preserved." The term "integrity and independence of the judiciary" references a vague concept, but a review of the canon's comment is helpful: "The integrity and independence of judges depends in turn upon their acting without fear or favor." It stands to reason, then, that, amorphous though these notions may be, a judge necessarily impugns the integrity and independence of the judiciary when he or she acts out of fear or favor. The record supports no indication, let alone proof, that Osborne was so motivated. The Commission has not accused Judge Osborne of acting to bestow favor upon anyone, and there is no suggestion that he was afraid. Canon 1 should not be seen or utilized as a "catch-all" provision that can be thrown in for good measure. In the absence of credible evidence to support such a charge, it is best reserved for cases in which there is a genuine issue of a judge's having been motivated to act out of fear or favor.
¶ 43. Similarly, the Commission has failed to demonstrate a clear violation of Canon 2(A). Though both of the judge's above-described legal failures amounted to judicial error, neither rose to the level of impropriety or the appearance thereof with which Canon 2 concerns itself. Indeed, Canon 2 primarily addresses limits on judges' conduct, such as prohibitions against "lend[ing] the prestige of their offices to advance the private interests of the judges or others," Code of Judicial Conduct, Canon 2(B), or "hold[ing] membership in any organization that practices invidious discrimination on the basis of race, gender, religion or national origin." Id. at 2(C). Though Judge Osborne's course of action in this case left much to be desired, his decisions simply do not amount to the kinds of impropriety proscribed by Canon 2(A).
¶ 44. These determinations leave unaddressed only the Commission's conclusion that Judge Osborne violated Canon 3(E) by continuing to act in the case even after entering an order of recusal. "The test for recusal of a judge is stated as follows: `Would a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality?" Copeland v. Copeland, 904 So.2d 1066, 1071 (Miss.2004) (quoting In re Conservatorship of Bardwell, 849 So.2d 1240, 1247 (Miss.2003)). Judge Osborne himself appears to have determined, by virtue of his sua sponte recusal, that this question should be answered affirmatively.[4]
*29 ¶ 45. However, the comment to Canon 3(E) imparts that "[b]y decisional law, the rule of necessity may override the rule of disqualification." A legal determination that Judge Osborne's recusal rendered him impotent to render further action in the case is one thing. But given the revelation to the judge of the allegation that the underlying confrontation involving a firearm was but a chapter in a long and sordid tale, the length of which he had been unaware, and the ethical rock and real-life hard place between which that revelation placed him, this Court should not, with the benefit of hindsight, condemn his decision. Neither the record presented by the Commission nor today's majority opinion addresses the question of whether Judge Osborne's voluntary and self-imposed disqualification was overridden by his duty as a conservator of the peace.
¶ 46. This Court's responsibility to review ethical complaints and punitive recommendations is not a joyful duty. The unseemliness of the process grants no excuse for skirting our duty, of course; but unless the facts of a case are clear and convincing so that we, as overseers of the state's judiciary, are left with no alternative but to order expulsion, we should not exercise that authority in marginal cases such as this, or even in close cases more convincing than the one before us today. The career of Judge Osborne is one that is not likely to be lauded in the ethics textbooks pondered by future Mississippi law students. But in a state where the power to select judges has been retained by the people, the decision of whether a member of the judiciary no longer deserves to serve is a matter best left to the electorate in all but the most egregious cases. Judge Osborne's previous misbehavior notwithstanding, this is no such case.
¶ 47. Therefore, I would decline to accept the Commission's findings that Judge Osborne violated Section 177-A of the Mississippi Constitution and Canons 1, 2(A), and 3(E) of the Code of Judicial Conduct. From the majority's judgment to the contrary, I respectfully dissent.
DICKINSON, J., JOINS THIS OPINION.
NOTES
[1] This judicial proceeding stems from a youth-court case, therefore, any reference to the minor child or her family will be by initials only.
[2] The Petitioner, the Commission on Judicial Performance, requests that this Court find that Judge Osborne also violated Canon 3B(2) and 3B(7). The Commission declined to reach that conclusion in its recommendation to this Court. We also decline to reach that conclusion. See Miss. Comm'n on Judicial Performance v. Boland (Boland II), 998 So.2d 380, 386 (Miss.2008) ("there is no provision in the Mississippi Rules of the Commission on Judicial Performance which allows Commission Counsel to appeal the decision of his own client").
[3] Notably, this provision of the Code commands youth court judges that "custody shall be deemed necessary" when "any person would be endangered by the child[.]" Miss. Code Ann. § 43-21-301(3)(b) (Rev.2004). One would not be unreasonable, therefore, in arguing that Judge Osborne would have committed error by declining to remand L.K. to custody with the knowledge that the May 5, 2006, incident was not isolated in nature. We might very well be looking at an Osborne proceeding with a different and vastly more tragic set of facts had she harmed someone because the judge had not detained her.
[4] We should note, however, that Judge Osborne remanded L.K. to custody in the same order by which he recused himself from the case and appointed Littleton. To say, therefore, that Judge Osborne "committed the minor child to detention after recusing from the case and, then, enter[ed] an order appointing James K. Littleton to hear the case without authority" does not provide a clear description of the timeline. Maj. Op. at 14 (emphasis added). A more complete account would be to say that Judge Osborne took three concurrent actions: his recusal, his appointment of Mr. Littleton, and his remand of L.K. to custody. Whether these simultaneous actions constituted misconduct is, of course, another question altogether; but I believe this to be the view of the facts that should govern the analysis.